UNITED STATES of America, Appellee,

v.

Marcos L. ANDERSON, a/k/a Marcos Loinas Anderson, Appellant.

No. 90–3041.

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc April 12, 1995.

Decided July 18, 1995.

**1324**

Dennis M. Hart, appointed by the court, Washington, DC, argued the cause and filed the briefs for appellant.

Neil H. Jaffee, Asst. Federal Public Defender, Washington, DC, argued the cause for amicus curiae. With him on the briefs was A.J. Kramer, Federal Public Defender, Washington, DC.

Thomas J. Tourish, Jr., Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, DC.

Before: EDWARDS, Chief Judge, and WALD, SILBERMAN, BUCKLEY, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN, in which HARRY T. EDWARDS, Chief Judge, and WALD, BUCKLEY, RANDOLPH, and TATEL, Circuit Judges, concur.

Concurring opinion filed by Circuit Judge BUCKLEY.

Concurring opinion filed by Circuit Judge RANDOLPH.

Dissenting opinion filed by Circuit Judge GINSBURG, in which STEPHEN F. WILLIAMS, SENTELLE, KAREN LeCRAFT HENDERSON, and ROGERS, Circuit Judges, join.

SILBERMAN, Circuit Judge:

Marcos Anderson appealed *inter alia* from four convictions under 18 U.S.C. § 924(c)(1) (1988 & West Supp.1995) for using or carrying a firearm "during and in relation to" a drug trafficking crime. A panel of our circuit rejected appellant's challenge to the multiple § 924(c)(1) convictions. *See United States v. Anderson,* 39 F.3d 331, 357, 359 (D.C.Cir.1994) *(Panel Decision), vacated and reh'g en banc granted* (D.C.Cir. Feb. 9, 1995). Upon rehearing *en banc,* we reverse three of appellant's § 924(c)(1) convictions.

## I.

Appellant was convicted of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (1988) (the conspiracy lasting more than six months); using a telephone to facilitate a drug transaction in violation of 21 U.S.C. § 843(b) (1988); possession with intent to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988); traveling interstate in aid of racketeering activities in violation of 18 U.S.C. § 1952(a) (1988); engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 (1988); and four violations of 18 U.S.C. § 924(c)(1) for carrying and using a firearm in relation to a drug trafficking offense.

Each of Anderson's four § 924(c)(1) convictions was tied to the same predicate offense, the narcotics conspiracy. Anderson's first § 924(c)(1) charge and conviction was centered on a 9mm pistol; FBI agents seized the gun in February 1989 from two juveniles en route to Los Angeles, where (at Anderson's direction) they were planning to rob a drug source. The second § 924(c)(1) conviction involved two guns connected to another abortive robbery attempt in March 1989, in which Anderson again sent a coconspirator to Los Angeles to rob a supplier (the guns were seized from the coconspirator). The third and fourth charges and convictions resulted from guns seized simultaneously at the time of Anderson's arrest on May 16, 1989. The third focused on a Browning .380 semiautomatic pistol seized, along with crack cocaine, cocaine powder, drug paraphernalia, and $1,000 in $1 bills, at the time of Anderson's arrest at his distribution center in Park Towers. The fourth § 924(c)(1) conviction was based on a 9mm semiautomatic pistol that was seized along with ammunition,

drug paraphernalia, and documents linking Anderson to the location, at the Woodner distribution center on the same day Anderson was arrested at the Park Towers. The later two charges and convictions thus involved simultaneous possession of weapons at two different locations.

Anderson argued on appeal that multiple § 924(c)(1) convictions could not be linked to only one underlying predicate offense. The government claimed that Anderson waived this argument below by failing to object to the indictment before trial or to his convictions and sentences on multiplicity grounds. The government argued that "[a] finding that appellant Anderson has waived his multiplicity objection is particularly appropriate since a timely objection before trial would have allowed the government to obtain a superseding indictment which linked at least two of the 924(c)(1) charges to separate predicate drug trafficking offenses." The panel denied the appeal with regard to the multiple § 924(c)(1) convictions and sentences. *See Panel Decision,* 39 F.3d at 357. Rehearing *en banc* was granted on the limited issue of appellant's multiple convictions for violations of § 924(c)(1).

## II.

Appellant, supported by the court-appointed *amicus,* contends that he may only be convicted of one violation of § 924(c)(1) for using or carrying a firearm during and in relation to any crime of violence or drug trafficking crime because, although the government charged Anderson with several separate predicate offenses, all four § 924(c)(1) charges were linked only to the conspiracy charge. In the paradigm case of a short duration drug distribution crime or crime of violence, it appears that the government rarely if ever asserts that a defendant carried or used a single gun more than once in relation to a single underlying offense—even if it could be argued that the "carries" or "uses" of the gun were separated in time and place. *But cf. United States v. Taylor,* 13 F.3d 986, 988–89 (6th Cir.1994) (two guns brought to one drug sale; one count of possession with intent to distribute, two § 924(c)(1) counts). The dispute over the meaning of § 924(c)(1) more typically arises in cases where the government charges a drug trafficking conspiracy, as in this case, or possession with intent to distribute—both lasting over a period of time. These sorts of cases often involve multiple guns. The government's legal position is based on its premise that § 924(c)(1) is a separate crime, not just a penalty enhancement, and therefore it claims the conclusion follows that an unlimited number of § 924(c)(1) violations can be tied to any one drug trafficking crime or crime of violence. The perception of congressional purpose animating the government's statutory construction is boldly presented in its brief: "[t]he underlying crime, *per se,* was not the focus of Congress' concern but rather was used merely as the vehicle, or 'hook,' upon which Congress federalized the prohibition against the use and carrying of firearms."

*Amicus* quarrels with the government's premise and joins appellant in challenging the government's conclusion. *Amicus* asserts that § 924(c)(1) *is* a sentence enhancement statute: therefore, the government is obliged not only to tie each alleged § 924(c)(1) violation to a separate predicate crime, but must also convict the defendant of the predicate crime before § 924(c)(1) would be chargeable.

Section § 924(c)(1) states in relevant part:

*Whoever,* during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, *uses* or *carries* a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if *the* firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if *the* firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction un-

der this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release....

18 U.S.C. § 924(c)(1) (1988 & West Supp. 1995) (emphases added).[1]

▪ *Amicus*, relying heavily on Judge Moore's dissent in *United States v. Hill*, 971 F.2d 1461, 1470 (10th Cir.1992) (en banc), presents a respectable argument for its position that § 924(c)(1) is *only* a penalty enhancement. We think, however, that the majority in *Hill* had the better of the case. The majority acknowledged that "[a]t first glance, § 924(c)(1) appears to be a penalty enhancement statute," *id.* at 1463, and that various courts have so characterized it. It noted, however, that the Supreme Court had described § 924(c) as creating "an offense distinct from the underlying felony" in *Simpson v. United States*, 435 U.S. 6, 10, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978), and that the structure of § 924(c) appears to make out a separate crime. *See Hill*, 971 F.2d at 1464. We, therefore, hold to our previous view that a § 924(c)(1) conviction stands on its own even if the defendant is acquitted of the underlying offense or the underlying offense is not charged, so long as the government presents sufficient evidence to prove the predicate offense as an element of the § 924(c)(1) violation. *See United States v. Laing*, 889 F.2d 281, 288–89 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1069, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990). Nevertheless, we appreciate that in *Simpson* both the majority and Justice Rehnquist in dissent seemed to refer to § 924(c) as a penalty enhancement statute; in *Deal v. United States*, — U.S. —, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), Justice Scalia, writing for the Court, did so again, at least indirectly. *See Deal*, — U.S. at —, 113 S.Ct. at 1997. Thus, it appears that the statute has a hybrid character, and so the government puts altogether too much weight on its premise.

In any event, the language of the statute does not appear to us to support the govern-

ment's conclusion—and certainly not to do so clearly. The crucial question, which has divided the circuits, is the meaning of the phrase "whoever, during and in relation to any crime of violence or drug trafficking crime ... *uses* or *carries* a firearm." The government contends that the statute has a "plain meaning," and that the interpretive focus should be on the verb "uses" and not on the phrase "during and in relation to" or "crime of violence or drug trafficking crime." But that grammatical argument is hardly decisive. *Cf. Smith v. United States*, — U.S. —, 113 S.Ct. 2050, 2056, 124 L.Ed.2d 138 (1993), *reh'g denied*, — U.S. —, 114 S.Ct. 13, 125 L.Ed.2d 765 (1994) (describing the "holistic endeavor" of statutory interpretation) (citations omitted). As one of our colleagues neatly put it at oral argument, the language of § 924(c)(1) can be interpreted in one of two ways: it may mean either that (1) "*each time* a defendant uses [or carries] a firearm in relation to a crime he commits a separate crime," or (2) that "if during the course of a crime a defendant uses [or carries] a firearm *at any time*, he commits a separate crime." The latter meaning implies that Congress was focusing on the defendant's employment of a gun *for the purpose of bringing about the crime*. In other words, the statute criminalizes the defendant's advancement of his criminal ends by means of a gun, whether carried or deployed in some more active manner. If it is the latter meaning which Congress intended, of course, only one of appellant's § 924(c)(1) convictions may stand.

The difficulty with the government's emphasis on the word "uses" is that, as we have previously recognized, *see United States v. Bailey*, 36 F.3d 106, 114–15 (D.C.Cir.1994) (en banc), *cert. granted*, — U.S. —, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995), the verb has varying meanings. *See also Smith v. United States*, — U.S. at —, 113 S.Ct. at 2057. The government's position would be stronger if the statute employed "use" as a noun, such that "a use" of a gun in relation to a drug crime would be a violation of § 924(c)(1). It appears to us that the drafts-

---

1. The current version of § 924(c)(1), amended since the time of Anderson's conviction, does not differ from the earlier version in any material respects.

men were not employing the word "uses" to imply that each discrete act that might be called a "use" constitutes a separate crime. Certainly the statute's pairing of "uses" with "carries" (a juxtaposition which, we note, the dissent essentially ignores) suggests that Congress was not seeking to criminalize every discrete deployment or brandishing of a gun during a period when a drug crime or crime of violence was being committed. "Carries" does not easily lend itself to a meaning that suggests a discrete act; rather, it implies a continuing activity, and the government's brief concedes as much. Yet, if Congress did not intend a § 924(c)(1) violation to occur on each discrete occasion that a defendant carried a gun during an ongoing drug crime, it follows that Congress would not have intended each deployment or discrete act in the same context to be a separate "use."

The machine gun clause in § 924(c)(1) also suggests that Congress had in mind the "if at any time" meaning of "uses." The statute states, "and if *the* firearm is a machinegun, . . . to imprisonment for thirty years." 18 U.S.C. § 924(c)(1) (emphasis added). The employment of the word "the" implies that Congress *was* thinking of the underlying drug crime or crime of violence whose character is irrevocably changed when the defendant uses or carries a gun. Congress spoke in terms of the word "the" because it did not regard as significant the number of times guns, or the number of guns that were carried or used during and in relation to the predicate crime. Once the defendant used or carried a gun, he violated § 924(c)(1), and if *the* gun was a machine gun, his penalty at first conviction was a full 30 years. If Congress had intended the "each time" meaning, it surely would have said, if "any such" firearm is a machine gun.

For that matter, if Congress had for a moment contemplated—or intended the prospect—that a defendant would be charged, as was appellant, with four § 924(c)(1) violations appended to one underlying drug crime, we think it virtually inconceivable that Congress would have used the language of § 924(c)(1). It would have been all too easy to have written the words "each time" or "on each

occasion" in the section to make that meaning clear. We think it fair to say, therefore, that Congress would have employed the language it did *only* if it had the "if at any time" meaning in its collective mind. Ambiguities in legislative language typically occur when the draftsmen simply do not imagine the nature of a scenario that subsequently occurs. Accordingly, the most logical explanation of the exact language chosen for § 924(c)(1) is that Congress did not in any way foresee the ambiguity which occupies our attention here (perhaps because it did not contemplate application of the statute to an ongoing crime). And, this situation could arise only if Congress intended that a single defining instance where a defendant uses or carries would have legal significance.

■ Although the legislative history of § 924(c)(1) is sparse—the section was originally added as a floor amendment by Representative Poff—it is consistent with the "if at any time" meaning. It is simply not true, as the government argued, that Congress was merely seeking "a hook" on which to hang a federalized prohibition against the use and carrying of firearms. (If that were so, Congress would have criminalized the use of guns in relation to *any* federal crime, not just those involving drugs or violence—an approach it consciously rejected in drafting the legislation, *see* dissent at 1338–39 n. 3.) Representative Poff's views are "entitled to weight, coming as they do from the provision's sponsor." *Simpson*, 435 U.S. at 13, 98 S.Ct. at 913. And he stated that his amendment "targets upon the *criminal* rather than the *gun*." *See* 114 Cong.Rec. at 22,231 (1968) (emphasis added). Similarly, Representative Harsha said that "the emphasis should be, and we are in agreement, on the user of the weapon, rather than the weapon itself." *Id.* at 22,234. Representative Poff also said that "[t]he prosecution for the basic felony and the prosecution under my substitute would constitute one proceeding out of which two separate penalties may grow," *id.* at 22,232, which certainly suggests the "at any time" meaning rather than a multiple "each time" or "each occasion" interpretation. In the same vein, Poff remarked that the amendment was designed to "persuade the man who is tempted to commit a federal felony to

leave his gun at home." *Id.* at 22,231. Accordingly, the complete § 924(c)(1) crime is committed—the persuasion fails—when the defendant brings the gun (carries it) or uses it in relation to an underlying drug trafficking or violent crime.

■ Section 924(c)(1) provides very serious penalties for repeated violations. The first conviction requires a five-year sentence, and the second and succeeding violations call for 20 years each. Under the government's interpretation, then, three or four "uses" or "carries" during one underlying drug crime or crime of violence would, as a practical matter, bring a life sentence. If Congress had intended that result, we would of course honor the choice; but we think that if Congress had wished the statute to operate in that fashion, it would have used language making it obvious. In that regard, Senator Mansfield, who sponsored an amendment to clarify that a second violation of § 924(c)(1) would result in a mandatory consecutive sentence, said:

> [T]his bill provides for the first time a separate and additional penalty for the mere act of *choosing to use or carry a gun in committing a crime under Federal law.* If that choice is made more than once, the offender can in no way avoid a prison sentence regardless of the circumstances.

115 Cong.Rec. at 34,838 (Nov. 19, 1969) (emphasis added). That formulation of the statute's purpose—to penalize the choice of using or carrying a gun *in committing a crime*—seems to us to imply that § 924(c)(1) punishes one and only one crucial decision; in other words, the "at any time" meaning.[2]

Seven of our sister circuits have determined that only one § 924(c)(1) violation can be appended to any single predicate crime. *See United States v. Cappas,* 29 F.3d 1187, 1189 (7th Cir.1994) (citing cases); *United*

States v. Lindsay, 985 F.2d 666, 673 (2d Cir.), *cert. denied,* ── U.S. ──, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993); *United States v. Sims,* 975 F.2d 1225, 1233 (6th Cir.1992), *cert. denied,* ── U.S. ──, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *United States v. Moore,* 958 F.2d 310, 312 (10th Cir.1992); *United States v. Hamilton,* 953 F.2d 1344, 1346 (11th Cir.1992); *United States v. Privette,* 947 F.2d 1259, 1262–63 (5th Cir.1991), *cert. denied,* 503 U.S. 912, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992); *United States v. Fontanilla,* 849 F.2d 1257, 1258–59 (9th Cir. 1988). Those courts have relied on two strands of analysis. The Sixth Circuit thought Congress' intent clearly was to limit a § 924(c)(1)'s "unit of prosecution" to the underlying predicate offense. "The purpose of § 924(c)(1) ... is to target those defendants who chose to involve weapons in an underlying narcotics crime or crime of violence. Consequently, the predicate offense, not the firearm, is the object of § 924(c)(1)." *Taylor,* 13 F.3d at 993–94. The Second Circuit in *Lindsay* believed that at most (at best for the government) the statute was ambiguous as to the appropriate unit of prosecution, and therefore the rule of lenity was to be applied. *Lindsay,* 985 F.2d at 673–76.

The government, consistent with its assertion that Congress sought to "federalize the prohibition against the use and carrying of firearms" and that "the underlying crime *per se* was not the focus of Congress' concern," appears to have repeatedly targeted guns as the basis of violations of § 924(c)(1), charging one § 924(c)(1) violation for each gun attributable to the defendant even when the guns were carried or "used" in the same place and at the same time as other targeted guns. But in all of the above cases, the courts of appeals have reversed convictions charged on this basis, holding that one predicate crime supported only one § 924(c)(1) conviction,[3]

---

**2.** The dissent points to an avowed penalty enhancement statute that relates to the District of Columbia, D.C.Code § 22–3202, to show that Congress knows how to write a penalty enhancement statute. That does not seem relevant to this case. Dissent at 1338. *But see* § 22–3204(b) ("No person shall within the District of Columbia possess a pistol ... or any firearm while committing a crime of violence or dangerous crime") for

an indication of the same sort of difficulty presented by § 924(c)(1).

**3.** Thus, in *Taylor,* 13 F.3d at 989, the defendants were each convicted of one count of possession with intent to distribute cocaine based on a drug sale to undercover police officers; five of the six were also convicted of two § 924(c)(1) violations for bringing two shotguns simultaneously to the place of the transaction. Similarly, in *Sims,* 975

and also requiring that the relationship be precisely stated.[4]

In perhaps the government's most ambitious pursuit of guns *qua* guns, in *Lindsay*, 985 F.2d at 669, the defendant was convicted of two predicate offenses, a cocaine conspiracy and a CCE. He was also convicted of 14 § 924(c)(1) violations: two different guns were each discharged on separate occasions (each of the two had a silencer, leading to the more severe sentences under § 924(c)(1)), and five guns were found at various locations in the defendant's home. *See Lindsay*, 985 F.2d at 672. These seven guns were claimed to have supported 14 convictions because each was allegedly linked to each of the two separate predicate crimes. The court of appeals reversed 12 of the 14 § 924(c)(1) convictions. *See id.* at 676.

The Eighth Circuit nevertheless in *United States v. Lucas*, 932 F.2d 1210, 1222–23 (8th Cir.1991) rejected the gathering consensus among the circuits. It thought "distinct uses" of firearms were separate violations of

§ 924(c)(1) even when each was linked to the same predicate crime. In that case (similar to ours), when simultaneous searches occurred at four locations where the defendants either lived or conducted drug sales, some guns and drugs were found at one house, and other guns, including a machine gun, were found at another location with drug paraphernalia. The court determined that the guns had separate purposes—to protect the different locations—and therefore concluded that these were different, separately chargeable "uses." The court relied on *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) in holding that two drug sales were two separate offenses because they stemmed from "separate impulses." *See Lucas*, 932 F.2d at 1223. The court thought the separate purposes of the guns "constituted separate 'impulses' in the *Blockburger* sense." *Id.*

As *Missouri v. Hunter*, 459 U.S. 359, 366–67, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983) made clear, however, whether *common or separate impulses* are criminalized is

---

F.2d at 1232, the five defendants were convicted of one underlying drug conspiracy to possess cocaine with the intent to distribute, and were also convicted of two § 924(c)(1) counts (one for use of machine guns and one for the use of non-machine guns). The defendants were arrested at a drug sale at a Burger King; an array of weapons (pistols, shotguns, fully automatic AR–15 machine guns) were found in both cars defendants used during the day in question. *See id.* at 1229–30. In *Moore*, 958 F.2d at 311, the defendant had been convicted of one count of possession with intent to distribute narcotics and two § 924(c)(1) violations: one based on two handguns and a rifle seized from defendant's house, and the second based on a Sten machine gun seized elsewhere. In *Hamilton*, 953 F.2d at 1345, the defendant was charged with one predicate offense, conspiracy to distribute and possess with intent to distribute drugs, but was also convicted on three § 924(c)(1) counts, all tied to the conspiracy. The first count involved the purchase of a Street Sweeper shotgun on October 8, 1988, which defendant was later seen firing behind a relative's car wash; the second count arose from the seizure of several firearms at defendant's residence on December 2, 1988; the third count stemmed from a machine pistol seized from the bedroom of another of defendant's residences on July 21, 1989.

4. In *Cappas*, 29 F.3d at 1188, the defendant was charged with two substantive offenses, extortion

by violent means and conspiracy to possess and distribute drugs. The defendant was also charged with three § 924(c)(1) counts: one for shooting at a distributor's house, and two others arising from an arsenal of multiple weapons seized at the defendant's home base. *See Cappas*, 29 F.3d at 1189–90. As it was unclear how the counts were connected to the separate substantive crimes, the court assumed that all of the § 924(c)(1) counts were linked to the conspiracy and reversed two of them. *See id.* at 1195. In *Privette*, 947 F.2d at 1260, the defendant was charged with two underlying offenses, one count of conspiracy to manufacture amphetamines and one count of possession with intent to distribute amphetamines. The defendant was also convicted on two § 924(c)(1) counts for two guns seized at the warehouse where the drugs were processed. *Privette*, 947 F.2d at 1261. It was unclear whether the jury separated out the guns and tied each to a separate predicate crime, or tied both guns to one drug crime; thus, the court reversed one of the § 924(c)(1) convictions. *See id.* at 1263. Similarly, in *United States v. Henry*, 878 F.2d 937, 939–40 (6th Cir.1989), one § 924(c)(1) conviction was reversed because the government did not precisely set forth the relationship between the two predicate offenses and the two § 924(c)(1) counts. *See Henry*, 878 F.2d at 943 (both firearm counts mentioned each drug count).

strictly a matter of statutory interpretation.[5] If, for example, Congress positively wished to make each and every gun possessed, carried, or deployed during the commission of an underlying drug crime or crime of violence the basis for a separate § 924(c)(1) violation, there would be no constitutional barrier to doing so. In that sense, the separate impulse (or separate transaction) limitation is quite artificial.

Subsequently, the Eighth Circuit, focusing on the word "a" in "uses or carries *a* firearm," did go so far as to hold explicitly that each gun possessed created a separate and distinct § 924(c)(1) violation. *See United States v. Freisinger,* 937 F.2d 383, 390 (8th Cir.1991). The court flinched though from the sentencing implications of that holding, concluding that when multiple § 924(c)(1) violations arise from a single predicate offense, they are not "second or subsequent" convictions under the statute and thus do not carry the 20–year penalties. *See Freisinger,* 937 F.2d at 391. Later, however, in a slight refinement that appears to conflate the separate gun and separate "use" approaches, the court suggested that multiple guns involved in the commission of a drug crime, even when possessed simultaneously in the same house, could constitute separate § 924(c)(1) crimes if they could be thought to have "separate uses" in the sense of separate purposes. *See United States v. Canterbury,* 2 F.3d 305, 306 (8th Cir.1993). There the defendant was charged with one count of a conspiracy to possess and distribute drugs and two § 924(c)(1) violations. The police found a pistol in the defendant's bedroom, along with a small quantity of drugs and a rifle in another part of the house near drugs and drug-trafficking paraphernalia. The district court dismissed one of the § 924(c)(1) counts, and the court of appeals reversed. The district court was instructed to hold a hearing to determine whether the government could show as a matter of fact that the rifle was intended for a separate "use" (pre-sumably connected to the separate stash of drugs).

More recently, the Fourth Circuit, in an opinion that seems to depart from its circuit precedent, *compare United States v. Luskin,* 926 F.2d 372, 378 (4th Cir.), *cert. denied,* 502 U.S. 815, 112 S.Ct. 68, 116 L.Ed.2d 43 (1991), determined that § 924(c)(1) could be employed to provide multiple convictions based on one predicate crime. *See United States v. Camps,* 32 F.3d 102, 107 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995). The defendant was charged with and convicted of eight separate § 924(c)(1) violations appended to a single underlying charge of conspiracy to possess with intent to distribute cocaine base. (He was, however, sentenced to 45–years' imprisonment for the § 924(c)(1) violations as if he had only been convicted of three violations, one violation per event involving guns.) On December 23, several of the conspirators (although not Camps) fired guns at a rival drug dealer, and on January 6, two other conspirators again fired at a rival drug dealer. Two days later, the same group was seen passing a rifle in a van and was discovered in possession of several weapons. The government argued on appeal, as it has here, that multiple violations of § 924(c)(1) are made out "whenever there have been multiple, separate acts of firearm use or carriage, even when all of those acts relate to a single predicate offense." *Id.* at 106. The government conceded, however, "and for purpose of this case only [the Fourth Circuit] accept[ed], that a defendant may not be punished multiple times for *simultaneous* firearm use or carriage." *Id.* at 109 n. 9 (emphasis in original), citing *cf. United States v. Freisinger,* 937 F.2d 383 (8th Cir.1991). (In light of *Canterbury,* 2 F.3d at 306, it is not at all clear what the government means by "simultaneous.") The Fourth Circuit thus upheld the § 924(c)(1) convictions as if there were only three violations rather than eight. It

---

**5.** In the face of a double jeopardy challenge to overlapping crimes proscribed by state statute, the Supreme Court in *Missouri v. Hunter* clarified the inquiry facing reviewing courts. According to the Court, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended," and the *Blockburger* approach to statutory construction is simply a means of ascertaining legislative intent, having no independent analytical force if that legislative intent is otherwise evident. *See Hunter,* 459 U.S. at 366–68, 103 S.Ct. at 678–79.

disagreed with all circuits other than the Eighth based on its reasoning that § 924(c)(1) "does *not* criminalize the underlying predicate offense. Section 924(c)(1), rather proscribes, as a separate and distinct offense, the use or carry of a firearm during the commission of ... these predicate offenses." *Camps*, 32 F.3d at 108, citing *Simpson*, 435 U.S. at 10, 98 S.Ct. at 911. Thus, "[t]o base a statute's unit of prosecution on an offense that the statute does not prohibit is illogical...." *Id.* at 109, 98 S.Ct. at 911.

With due respect, we do not follow the Fourth Circuit's reasoning. The underlying drug offense or crime of violence is already made a federal crime under another section of the federal code. To be sure, if § 924(c)(1) was merely a penalty enhancement—that did not apply unless and until a defendant was convicted of the main crime—these sorts of cases would not arise at all. But it is surely not *illogical* for Congress to make § 924(c)(1) a distinct crime tied to a predicate crime, and yet to treat it as a course of conduct or state of being armed. The result is that the government need not convict of—but it must prove—the predicate crime (which is why § 924(c)(1) has a hybrid character).

As is apparent, the government's litigation position regarding the meaning and application of § 924(c)(1) is rather plastic. In various appeals, the government has adopted different positions to support somewhat different charging decisions in district courts. Before us, the government contends that § 924(c)(1) "permits multiple convictions and sentences for each separate use [apparently meaning a separate act] ... *particularly* in cases such as this, where the defendant has used a firearm (or different firearms) on different occasions for distinct purposes." (emphasis added). The government does not exclude, as it did on appeal in *Camps*, simultaneous "uses"—presumably because here we do have two convictions of § 924(c)(1)

attributable to the same moment in time (*i.e.*, the two seizures at the time of Anderson's arrest). The third charge in this case, it will be recalled, was based on the presence of a Browning .380 semiautomatic pistol that was seized, along with drugs and money, at the Park Towers distribution center when Anderson was arrested. The police simultaneously seized a 9mm semiautomatic pistol with drug paraphernalia at the Woodner distribution center on the same street as Park Towers (16th Street, N.W. in Washington) along with documents linking Anderson to that location.[6]

It seems particularly anomalous for the government to assert that in a situation such as this, where a defendant is storing drugs with the intention of distributing at two locations, placing a gun at each location gives rise to separate § 924(c)(1) violations. After all, it has been held that possession is a continuous act, and that therefore the government may not charge two simultaneous counts of possession with intent to distribute based on two separate caches of drugs. *See, e.g., United States v. Woods*, 568 F.2d 509, 513–14 (6th Cir.), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978). The government has apparently acquiesced in that interpretation of 21 U.S.C. § 841(a)(1), but nevertheless claims that the simultaneous "use" by possession—in a strategic location—of guns at two different locations gives rise to two separate § 924(c)(1) violations.

This anomaly helps to illustrate how awkward it would be to apply § 924(c)(1) to a host of circumstances if we accepted the government's interpretation of the statute. As the dissent recognizes, *see* dissent at 1342, it would surely prove devilishly difficult analytically to determine on which occasions and in what circumstances during an ongoing conspiracy or a long-term possession with intent to distribute a defendant was guilty of another separate and distinct "use" or "carry." Moreover, if we were to accept the

---

6. The dissent would avoid this point by asserting that defendant "admits for purpose of this appeal that he used firearms on these *four different occasions*" as if they occurred at four separate times. Appellant's counsel (we also appointed an *amicus*) was not the most artful in stating in

his brief that the § 924(c)(1) convictions in question—"did take place on separate days and involved individual firearms"—but, whatever appellant's counsel meant by that awkward phrase, the facts are clear.

government's argument—that in theory the number of distinct uses or carries that could be appended to an underlying predicate is infinite—it could and would be expected that the government would charge multiple violations of § 924(c)(1) with respect to almost any crime of violence or drug trafficking crime. The dissent suggests that such violations could be limited to separate "impulses" or separate "transactions." As we have noted, however, once it is accepted that Congress intended separate "uses" to be separate violations, the logic of *Canterbury* appears impeccable; so long as each gun possessed or carried can be said to have a separate purpose, each gun represents a different violation of § 924(c)(1). Thus a derringer hidden in one sleeve would presumably have a different purpose than a .357 Magnum carried in a shoulder holster.

Even assuming *arguendo* that the "separate transaction" limitation can be imposed as an interpretation of the Act,[7] one can easily imagine that each separate display of a gun would be a separate § 924(c)(1) violation, and presumably each day a gun was carried would be one also. The government, ignoring the simultaneous possession of two guns in separate stashes in counts three and four, would focus our attention on the two separate *events* in counts one and two. It argues—and the dissent accepts, *see* dissent at 1341–42—that we should not concern ourselves with the troubling implications of this proposed interpretation as it would apply in other cases; it is enough that in our case two events are easily distinguishable. But we think it necessary to consider the analytical difficulties with the government's approach for two reasons: first, because to do so casts light on Congress' intent in employing the language before us; and second because it is the more principled approach. We are naturally reluctant to apply a rule of law that

does not seem to extend very far beyond the facts of the case before us. *See* Antonin Scalia, *The Rule of Law as a Law of Rules,* 56 U.Chi.L.Rev. 1175, 1177–79 (1989). Of course, if Congress intended us to apply § 924(c)(1) as the government suggests, we would have no alternative; but, as we observed *supra,* we think that if Congress had contemplated convictions for multiple "uses" or "carries" during one ongoing drug crime or crime of violence, it would have composed language that would clearly indicate that intent and make its implementation easier.

The government (and the dissent) rely on early Supreme Court cases to support the argument that the word "uses" refers only to a discrete act, not to one of a continuing nature or (most relevantly) a conditional status. *Compare In Re Snow,* 120 U.S. 274, 281, 7 S.Ct. 556, 559, 30 L.Ed. 658 (1887) *with In re Henry,* 123 U.S. 372, 374, 8 S.Ct. 142, 143, 31 L.Ed. 174 (1887); *see* dissent at 1337. But the mail fraud statute interpreted in *In re Henry* makes it a crime to "place *any* letter or packet in *any* post office," *see* 18 U.S.C. § 1341 (1988) (emphasis added), and therefore criminalizes each act of mailing a letter. *See* 123 U.S. at 374, 8 S.Ct. at 143. ("Each letter so ... put in constitutes a separate and distinctive violation of the act."). If the statute had made it a crime to "use" the mails, it would be more analogous to this case—and would have surely been interpreted as forbidding a course of conduct. Similarly in *Ebeling v. Morgan,* 237 U.S. 625, 629, 35 S.Ct. 710, 711, 59 L.Ed. 1151 (1915), the defendant was held to have been properly convicted of six violations of a statute providing that "[w]hoever shall *tear, cut, or otherwise injure* any mail bag ... shall be fined," even though he cut the six mailbags during the same criminal episode. The Court reasoned that "[a]lthough the transaction of cutting the mail bags was in a sense

---

7. In *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), the Supreme Court held that the Mann Act, which provides that "[w]hoever knowingly transports ... any woman or girl ... for ... an immoral purpose," could not be interpreted (notwithstanding the word "any") to create two separate crimes if two women were transported in the same transaction. The actual language of the Mann Act appears even less ambiguous than does § 924(c)(1),

but still the Court would not lightly infer that Congress meant to create two crimes arising out of the one transaction. In other words, the ambiguity arose *because* there was only one transaction. It does not follow, of course, that the ambiguity in our statute between the "at any time" and "each time" meanings is resolved by simply accepting the "each time" choice and limiting "each time" to a separate transaction.

continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged." *Id.* Again, that statute referred to "any mailbag."

Section 924(c)(1) differs significantly from those statutes in which the Supreme Court has distinguished a discrete act from a continuous one. In this statute, we have the added complexity of *another* act—the underlying drug crime or crime of violence to which a § 924(c)(1) violation is appended.[8] (The statute in *Ebeling* would be analogous to this case if it read, "whoever cuts a mailbag during or in relation to a theft of mails commits a crime"; or, better yet, "whoever uses a knife during or in relation to cutting mailbags ... and if the weapon is a machete, he shall receive a 30 year sentence.") Therefore, if Congress intended, as we think it did, the "at any time" meaning, it does not really matter whether "uses" or "carries" is susceptible of a discrete act interpretation. Even if one can imagine a distinct "use" or "carry," if Congress intended us to ask only whether the defendant at any time used or carried a firearm in relation to the underlying predicate crime, § 924(c)(1) is properly interpreted without regard to this consideration.

We are led, then, to the ultimate conclusion that at a very minimum, § 924(c)(1) is ambiguous. The rule of lenity must, therefore, govern application of the statute. *See United States v. Nofziger,* 878 F.2d 442, 452–53 (D.C.Cir.1989); *Lindsay,* 985 F.2d at 678; *United States v. Chalan,* 812 F.2d 1302, 1317 (10th Cir.1987), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988) (citations omitted). As Justice Frankfurter once elegantly put it:

> It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions.

About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it— when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment....

*Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).

The government and the dissent nevertheless argue that to interpret the statute as we do is to ascribe to Congress the illogical ("it borders on the absurd," dissent at 1339) purpose of permitting "every use after the first use [to be] a free use." This argument assumes its conclusion; it defines "uses" (significantly, it avoids the word "carries,") as referring to a distinct act—the "every time" meaning—and then asks the circular question why would Congress not want to punish "a use" every time. We think that Congress' explicit concern for disincentives—through punishment of second and subsequent violations with 20–year sentences each—rather suggests that if Congress had wished the statute to be interpreted as the dissent has done, it would have indicated so clearly.[9]

Unless the government wishes to retain the option to seek a *de facto* life imprisonment penalty in many routine drug cases by simply charging § 924(c)(1) violations based on the number of guns involved, the practical

---

8. The dissent compares § 924(c)(1) to a felony murder statute. But typically such a statute is directed at "*any* death [that] results during the commission of any felony" (emphasis added). *See State v. Girdler,* 138 Ariz. 482, 675 P.2d 1301, 1308 (1984).

9. The dissent's policy argument regarding incentives is overdrawn. Since four § 924(c)(1) violations would be punished with 65–years' imprisonment (with a machine gun, it would be 60 years for two guns), even under the dissent's logic all subsequent deployments of guns during the same predicate crime would be "free." In that respect, the dissent's reference to Blackstone, *see* dissent at 1339, is equally applicable to its own interpretation of the statute. Moreover, that logic also requires the conclusion that each shot fired is a separate violation, if each additional shot is not to be free.

significance of the "at any time" interpretation may not be great. *Cf. United States v. Cappas,* 29 F.3d at 1190 (government concession of ease of charging multiple § 924(c)(1) counts tied to separate crimes). In circumstances in which a defendant displays or fires a gun on separate and distinct occasions, the government will often be able to charge those acts as separate § 924(c)(1) violations linked to separate predicate offenses. Indeed, it is likely that the more distinctive is the particular "use or carry," the easier that will be. As we noted earlier, in this very case the government argued before the panel that "a finding that appellant Anderson has waived his multiplicity objection is particularly appropriate since a timely objection before trial would have allowed the government to obtain a superseding indictment which linked *at least two* of the § 924(c) charges to separate drug offenses." (emphasis added). And government counsel at oral argument before the *en banc* court frankly admitted that "I don't disagree that in many cases, if not most, we could charge a separate predicate per gun use."

Further, at oral argument, counsel for the government agreed that appellant's separate § 924(c)(1) charges could have been readily tied to (1) the conspiracy, (2) the Park Towers possession with intent to distribute count, and (3) Travel Act charges (or a similar inchoate, interstate crime of violence) for the robbery attempts (government counsel stated that he "didn't know why we didn't charge [Travel Act violations] in this case," which would have provided additional predicates to which to tie the attempted robbery "uses"). *See* 18 U.S.C. § 1958 (1988); *cf. United States v. Luskin,* 926 F.2d at 379 (holding that offense of traveling or causing another to travel in interstate commerce with the intent to commit murder is a "crime of violence" for purposes of § 924(c)(1)).

Depending then on just how extensive and pervasive is the government's concession in *Camps* concerning multiple guns, obliging the government to tie a § 924(c)(1) charge to a specific predicate crime may not prevent the government's use of that section to seek quite extensive penalties.

\* \* \* \* \* \*

Whatever the practical implications, however, we agree with the Second Circuit that, at minimum, the statute is quite ambiguous with respect to the issue before us. Accordingly, we hold that only one § 924(c)(1) violation may be charged in relation to one predicate crime.

BUCKLEY, Circuit Judge, concurring:

We are asked to consider the single question of whether the proper unit of prosecution under 18 U.S.C. § 924(c)(1) is the use of a firearm or the predicate drug trafficking offense. As I can see no principled basis upon which to choose between these competing interpretations, I conclude that the rule of lenity provides the only basis for decision.

In this case, the textual debate has reached stalemate not merely because the judges on either side are effective advocates for their positions, but because of the deep ambiguity actually present in section 924(c)(1). "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). To rely on the rule of lenity in this case is not to set a trap for the legislature, as the dissent implies. Dissent at 1340–41. Rather, it is to recognize that "[i]t is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820) (Marshall, C.J.).

In this case, where the government proved four separate uses of a firearm but alleged only a single predicate offense, the rule of lenity dictates that Anderson may be convicted of only one section 924(c)(1) violation. *Cf. United States v. Lindsay,* 985 F.2d 666, 676 (2d Cir.1993) (invoking rule of lenity and concluding defendant who uses multiple firearms in relation to a single predicate offense may be charged with only one § 924(c)(1) violation). To find otherwise would be to risk punishing Anderson more severely than Congress intended.

RANDOLPH, Circuit Judge, concurring:

The Oracle at Delphi would have been proud of 18 U.S.C. § 924(c). The statute yields barely a clue about how to apply it to drug dealers who routinely arm themselves as they go about their awful business and, when caught, are charged only with one continuing drug offense. Reading and rereading my colleagues' skillful efforts to parse the language only plunges me deeper into the fog. The arguments on both sides are pretty much in equipoise. The rule of lenity is, as I see it, the one path out. I therefore join Judge Silberman's opinion.

GINSBURG, Circuit Judge, with whom STEPHEN F. WILLIAMS, SENTELLE, KAREN LeCRAFT HENDERSON, and ROGERS, Circuit Judges, join, dissenting:

Marcos Anderson managed an extensive drug distribution network that operated in the Washington, D.C. area for several years. He bought drugs from suppliers in several other cities around the country and ran five "distribution centers" in Maryland, Virginia, and the District of Columbia. For this, Anderson was indicted along with 31 co-conspirators, tried, and convicted of, among other things, conspiring to distribute cocaine, in violation of 21 U.S.C. § 846.

At trial, the Government also proved that Anderson had used at least five firearms on four separate occasions during the course of the conspiracy. In February 1989 Anderson gave two juveniles a .9mm pistol to take to Los Angeles, where Anderson planned to rob a drug supplier. In March of that same year he sent two more guns to Los Angeles with another individual, again in order to rob the supplier. When Anderson was arrested in May 1989 at one of his distribution centers, he had a Browning .380 semiautomatic pistol. That same day the police seized another .9mm semiautomatic pistol at another of Anderson's distribution centers. For this, Anderson was convicted on four counts of using a firearm during and in relation to the drug-trafficking conspiracy, in violation of 18 U.S.C. § 924(c)(1).

Anderson admits for the purpose of this appeal that he used firearms on these four different occasions over the course of the conspiracy. He argues, however, that he can be convicted under § 924(c)(1) for only one of these four uses of a firearm. *See generally United States v. Anderson*, 39 F.3d 331, 353–57 (D.C.Cir.1994) (panel decision). For the reasons stated below, I would affirm Anderson's convictions.

I. The Statute

Section 924(c)(1) provides in relevant part that "[w]hoever, during and in relation to any ... drug trafficking crime, ... uses ... a firearm, shall ... be sentenced to imprisonment for five years...." * Anderson contends that he may not be convicted under this statute for more than one use of a firearm in connection with a single drug-trafficking conspiracy, and that the court therefore should vacate three of his convictions in order to avoid violating double jeopardy principles.

Anderson does not dispute that the Congress has the power to punish as a separate

---

* The full text of the statute in effect at the time reads:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a machinegun, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if a the firearm is a machinegun, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

offense each use a participant in a drug-trafficking conspiracy makes of a firearm in the course of the conspiracy; for as the Supreme Court explained in *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983), "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Rather, Anderson argues that the Congress did not intend to allow for multiple gun violations in connection with a single drug offense, or in the alternative, that it is at least unclear whether the Congress so intended and that he should receive the benefit of the doubt.

The amicus curiae arguing on Anderson's behalf (at our request) makes an argument that is logically anterior to any pressed by Anderson. The amicus submits that in § 924(c)(1) the Congress meant only to enhance the punishment applicable to the defendant's related drug-trafficking crime. Therefore, the argument goes, the statute may be implicated no more than once in connection with a single drug crime.

The argument advanced by the amicus is easily disposed of by reference to the text of § 924(c)(1) and clear Supreme Court precedent. The statute by its terms makes it a crime to use a firearm in connection with illegal drug-trafficking; thus, the Congress did not simply provide an enhanced punishment for a drug offender who uses a gun to commit another crime. Or as the Supreme Court put it, in § 924(c)(1) the Congress "create[d] an offense distinct from the underlying federal felony." *Simpson v. United States,* 435 U.S. 6, 10, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978). The commission of a drug-trafficking crime is therefore one element of a § 924(c)(1) violation, *Smith v. United States,* —— U.S. ——–——, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993), just as the use of a gun is another. As long as the Government proves both elements (and the requisite intent) beyond a reasonable

doubt, the defendant can be convicted under § 924(c)(1), regardless whether he is also convicted of (or for that matter even charged with) the related drug-trafficking crime. *See, e.g., United States v. Laing,* 889 F.2d 281, 288–89 (D.C.Cir.1989) (holding that in some circumstances a defendant acquitted on the drug-trafficking charge may be punished for violating § 924(c)(1)).

For his part, Anderson submits that the statute "emphasizes the relationship" between the use of a firearm and the connected drug-trafficking crime, thus indicating that the Congress "did not intend a separate violation for each [use of a] firearm." I agree that the requirement that the firearm have been used in connection with (literally, "during and in relation to") a drug-trafficking crime limits the application of § 924(c)(1) to certain uses of a firearm—loosely, uses that further the commission of the drug crime—but that limitation does not speak to the question whether there may be more than one use in connection with the same drug offense. It is certainly not a reason to think that a defendant who has committed more than one separate and distinct criminal act, i.e., has more than once used a gun in connection with a single drug-trafficking offense, has violated § 924(c)(1) only once.

There are, of course, statutes that criminalize a course of conduct rather than an individual act; § 924(c)(1) is just not one of them.[1] As the Supreme Court stated in *Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1932) (quoting WHARTON'S CRIMINAL LAW, 11th ed., § 34 n. 3): "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately."

*Blockburger* itself concerned a statute making it "unlawful for any person to . . . sell . . . drugs." *Id.* at 300 n. 1, 52 S.Ct. at 181 n. 1. The Court reasoned that the statute "does not create the offense of engaging in the business of selling the forbidden drugs,

---

1. The opinion of the Court (at 7) notwithstanding, there is nothing to the contrary to be found in the statutory prohibition of "carrying" a gun. If anything, it is easier to say that a drug dealer who takes up his gun on two separate occasions in connection with the same drug-trafficking offense has "carried" his firearm more than once than it is to decide whether he has "used" his gun once or twice.

but penalizes any sale made." *Id.* at 302, 52 S.Ct. at 181. Thus, one who engages in the business of selling drugs violates that statute each time he makes a sale. So too with § 924(c)(1): by its terms the statute prohibits not "engaging in the use" of a firearm in connection with a drug-trafficking crime, but the "use" of a firearm in connection with a drug-trafficking crime. Like the drug dealer in *Blockburger* who made multiple drug sales, Anderson made use of a firearm four separate and distinct times in the course of a long drug conspiracy, and that makes him liable for four violations of the statute.

This understanding of § 924(c)(1) is confirmed by a long line of decisions, in addition to *Blockburger,* dealing with the question of precisely what act a particular statute makes criminal. All of these decisions conclude that the particular act referred to in the statute is the determining factor. Whether that act is of a discrete or of a continuing nature is therefore critical. The source of this distinction is a pair of cases decided by the Supreme Court in 1887 and still as instructive as they were then. *In re Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887), the Court held that a defendant could be convicted only once pursuant to a statute providing that "if any male person ... cohabits with more than one woman, he shall be deemed guilty of a misdemeanor," as the offense was "inherently[ ] a continuous offense ... not an offense consisting of an isolated act." *Id.* at 281, 7 S.Ct. at 559. *In re Henry,* 123 U.S. 372, 8 S.Ct. 142, 31 L.Ed. 174 (1887), however, the Court upheld multiple convictions pursuant to the federal mail fraud statute, Rev.Stat. § 5480, which provided: "If any person ... shall, in and for executing [any] scheme or artifice, ... place any letter or packet in any post-office ... such person ... shall be punished." *See* 18 U.S.C. § 1341 (mail fraud, current version); *see also* 18 U.S.C. § 1343 (wire fraud). There the defendant had mailed multiple letters in furtherance of one such scheme. The Court

parsed the statute as follows: "[T]he act forbids ... the putting in the post-office of a letter or packet ... in furtherance of such a scheme. Each letter so ... put in constitutes a separate and distinct violation of the act." *Id.* at 374, 8 S.Ct. at 143. Indeed, it is no exaggeration to say that the mail fraud statute—which might as well have said that "Whoever, during and in relation to a scheme to defraud, mails a letter"—presents the same interpretive issue that this case raises regarding § 924(c)(1), and that the Supreme Court has already resolved that issue.[2]

Other decisions in which the Supreme Court distinguishes between statutes that prohibit an individual act and those that prohibit a course of conduct include *Ebeling v. Morgan,* 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915), where the defendant was held to have been properly convicted of six violations of a statute providing that "[w]hoever shall *tear, cut, or otherwise injure* any mailbag ... shall be fined," even though he cut the six mailbags during the same criminal episode. The Court reasoned: "Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged." *Id.* at 629, 35 S.Ct. at 711. In *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the text, "[w]hoever knowingly *transports* in interstate or foreign commerce ... any woman or girl for ... [an] immoral purpose" was held to support only one conviction for simultaneously transporting two women because "the act of transportation was a single one," *id.* at 82, 75 S.Ct. at 621; otherwise the prosecution could "turn[ ] a single transaction into multiple offenses." *Id.* at 84, 75 S.Ct. at 622. Similarly, in *Ladner v. United States,* 358 U.S. 169, 178 n. 6, 79 S.Ct. 209, 214 n. 6, 3 L.Ed.2d 199 (1958), "[w]hoever shall ... *assault* [a federal officer]" was held to support only one conviction where a single shot wounded two offi-

---

**2.** The Court's attempt (at 19) to distinguish the mail fraud statute upon the ground that it refers to the mailing of *"any* letter or packet in *any* post office" is unpersuasive in light of the Supreme Court's focus upon the defendants' separate acts in *Snow* and *Henry.* Even if the Government's ability to prosecute multiple counts under the

mail fraud statute turned solely upon the number of letters sent (rather than upon the number of times the defendant sends one or more letters), the result under § 924(c)(1) would be a "separate guns" test—not the "predicate offense" or "at any time" approach advanced by the Court.

cers; the Court noted however, that if two shots had been fired, then two convictions might stand.

As the Government suggests, one way of succinctly stating the rule to be derived from these cases is that the operative verb in the statutory definition of the crime defines the unit of prosecution. Regardless whether this proves always to be true, in this case there is no gainsaying the substantive distinction between § 924(c)(1) as written—"whoever *uses a firearm* during and in relation to a drug-trafficking crime shall be punished"—and § 924(c)(1) as Anderson and the Court would rewrite it—"whoever *commits a drug-trafficking crime* with a gun shall be punished."

The rule that a crime is committed each time a defendant performs the proscribed act is so obvious that courts rarely pause to comment upon it. Consider a variation on § 924(c)(1) simply making the use of a firearm a crime; the proposition that each separate use would be a separate violation of the statute would scarcely warrant any mention. That § 924(c)(1) narrows the prohibited conduct to the use of a firearm in connection with another criminal offense does not alter the appropriate unit of prosecution from "use" of a firearm to the other offense. As noted above, the requirement that the defendant's use of a firearm take place in connection with a drug-trafficking crime merely reflects the Congress's intention to single out as federal offenses those uses of a gun that facilitate the commission of such crimes and not others. The resulting doctrinal structure is in all respects like "the classic formulation of the felony-murder doctrine [which] declares that one is guilty of murder if a death results during the commission of any felony," Model Penal Code § 210.2, comment 6, but not in connection with a misdemeanor. Causing two deaths during a single felony yields two punishments for felony murder, *see, e.g., State v. Girdler*, 138 Ariz. 482, 675 P.2d 1301, 1307–08 (1983), as should using a gun two times during the course of a single drug-trafficking offense.

Had it so chosen, of course, the Congress could easily have drafted § 924(c)(1) to make it but one crime to use a firearm any number of times in connection with a drug-trafficking offense. Indeed, in fashioning the law of the District of Columbia, it took just that approach to the use of guns in connection with a crime of violence. *See* D.C.Code § 22–3202 ("Any person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with or having readily available any pistol or other firearm ... shall ... be imprisoned for ... not less than five years"); *Thomas v. United States*, 602 A.2d 647, 650 (D.C.App.1992); *see also* Pub.L. No. 72–275, § 2, 47 Stat. 650 (1932); Pub.L. No. 90–226, Title VI, § 605, 81 Stat. 734, 737 (1967); Pub.L. No. 91–358, Title II, § 205, 84 Stat. 473, 600 (1970) (all enacting this same operative text prior to and contemporaneous with the formulation of § 924(c)(1)). Anderson and the Court read § 924(c)(1) as if it were drafted in the same way.

Our obligation is to read the statute as written, and thus to apply the expressed intent of the Congress. So doing, I think it is clear that an offender violates § 924(c)(1) as he would any other statute, each time he commits the act that it proscribes, i.e., using a firearm in connection with a drug-trafficking crime.

## II. Legislative History

Anderson seeks to obscure the clear meaning of § 924(c)(1) with the diversionary claim that there is no indication in the sparse legislative history of the statute that the Congress meant to prohibit each use of a firearm in connection with a drug-trafficking crime. *Cf. American Civil Liberties Union v. FCC*, 823 F.2d 1554, 1568–69 (D.C.Cir. 1987) (legislative history cannot cast doubt upon clear statutory text). For what it is worth, however, the legislative history serves only to confirm our conclusion that Anderson's four convictions must stand. First, the legislative history clearly supports what the Supreme Court found in *Simpson*, *viz.*, that the Congress intended separately to punish the use of firearms rather than simply to increase the sentence for the drug-trafficking crime in connection with which the firearms were used.[3] "What this amendment

---

3. Contrary to the Court's assertion (at 1327–28), the original version of § 924(c)(1) did in fact

does is to make a Federal crime [of] the use or possession of a firearm ... while committing these criminal acts.... [W]e now have the opportunity to make the punishment for criminal use and possession of firearms so severe that such crimes will become [rare]." Statement of Rep. Casey, 114 Cong. Rec. 21793 (July 17, 1968) (sponsor of first proposed version of statute). "Any person should understand that if he uses his gun and is caught and convicted, he is going to jail. He should further understand that if he does so a second time, he is going to jail for a longer time." Statement of Rep. Poff, 114 Cong.Rec. 22231 (July 19, 1968) (sponsor of first enacted version of statute).

Second, there is no indication that the Congress meant to limit its prohibition of the use of a firearm during a drug-trafficking crime to the first such use. Rather, all indications are to the contrary. Consider: "The penalties in this amendment were not addressed to the base felony.... The amendment was addressed to the use of a firearm in the commission of the base felony. It was designed to persuade the man who has decided to set forth on a criminal venture to leave his gun at home." Statement of Rep. Poff, 114 Cong.Rec. 30583 (Oct. 10, 1968). As explained by Senator Mansfield, the sponsor of an amendment to make it clear that a second violation would result in a mandatory consecutive sentence:

> [T]his bill provides for the first time a separate and additional penalty for the mere *act of choosing to use* or carry *a gun* in committing a crime under Federal law. If that choice is made more than once, the offender can in no way avoid a prison sentence regardless of the circumstances.

115 Cong.Rec. 34838 (Nov. 19, 1969) (emphasis added). Thus, the "act of choosing to use ... a gun" is precisely what the legislators meant to prevent and to punish, and it should be no surprise if the text of the statute accomplishes precisely that result.

Indeed, it borders on the absurd to acknowledge, as Anderson and the Court must do, that the Congress wished to deter and to punish "the act of choosing to use ... a gun" and yet to maintain that it did not wish to punish again the criminal who chooses again to use a gun. Under the Court's interpretation of § 924(c)(1), however, every use after the first use is a free use. That is, once a drug conspirator has used his gun once in furtherance of the conspiracy, he may as well use, carry, display, brandish, and fire his weapon throughout the conspiracy, for no matter what he does with his firearm, he can be punished under § 924(c)(1) for only one use. He has the same perverse incentive that a thief faced when at common law, *see* Blackstone, 4 COMMENTARIES *68, virtually all felonies were punishable by death: "As well be hanged for a sheep as a lamb."[4]

Anderson responds by claiming that the Government can still prosecute a defendant for multiple violations of § 924(c)(1); it has only to prosecute him for multiple drug crimes. His own conduct belies his point, however. Anderson twice sent to Los Angeles guns with which to rob a supplier. Since robbery is not a federal crime (nor, obviously, a drug-trafficking crime) the only reason that he could be charged under § 924(c)(1) at all for those two episodes is that the guns were both tied (via the intended robberies) to his on-going drug-trafficking conspiracy. While the Government may have been able to link one of his other uses of a gun to the Park Towers possession-with-intent-to-distribute count, there is no basis for assuming (as the Court does at 22) that the Government could have linked Anderson's other two uses to the Travel Act or to some other inchoate crime, much less that there will always be enough qualifying felonies to sup-

make it a crime to use a gun "during the commission of any robbery, assault, murder, rape, burglary, kidnapping or homicide." *See* 113 Cong.Rec. at 5704 (Mar. 7, 1967); *see also* Pub.L. No. 90–618 § 102, 82 Stat. 1224 (Oct. 22, 1968) (limiting this proposal to "any felony which may be prosecuted in a court of the United States").

4. It is no answer for the Court to point out (at 1333 n. 9) that even under the Government's theory there comes a point at which an additional "use" of a gun is "free," owing to the fact that an incremental prison term that starts after the defendant's life expectancy is not an effective deterrent; the same may be said of any penalty of imprisonment as applied to a multiple offender.

port the defendant's prosecution for his each separate use of a gun.

The difficulty with the Court's theory of the case is even more apparent when one considers its effect upon that aspect of the statute that specifies a higher penalty for the use of an especially dangerous weapon, such as a machinegun. If Anderson could not be punished for a second use of a firearm to rob his L.A. supplier, then he might as well have used a machinegun. Perhaps he would reply that he could then be prosecuted and sentenced for the use of the machinegun rather than for the use of the pistol; but that would be to say that his first use of a gun (the pistol) was a crime only until his second use (the machinegun), whereupon his first use (the pistol) was somehow rendered not a crime. *See* Ct.Op. at 1326–27. To attribute such uncertainty and illogic to a Congress that intended straightforwardly to outlaw "the act of choosing to use ... a gun" is simply not tenable. I can see nothing in the legislative history of § 924(c)(1) that casts doubt upon the proposition that one violates the statute anew, and can be convicted and sentenced for, each time one uses a firearm in connection with a drug-trafficking crime.

### III. The Rule of Lenity

Anderson maintains in the alternative that even if it is possible to construe § 924(c)(1) to allow multiple convictions for multiple uses of a gun in connection with a single drug-trafficking offense, the statute is at least ambiguous and, under the rule of lenity, he should receive the benefit of a more favorable interpretation.[5] This argument misconceives the nature of the ambiguity necessary to invoke the rule of lenity, which must be "grievous," *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991), and may not depend upon an "implausible interpretation of a statute." *Taylor v. United States,* 495 U.S. 575, 596, 110 S.Ct. 2143, 2157, 109 L.Ed.2d 607 (1990). As the Supreme Court has said, in construing § 924(c)(1) itself:

The mere possibility of articulating a narrower construction ... does not by itself make the rule of lenity applicable. Instead the venerable rule is reserved for cases where, "after seiz[ing] every thing from which aid can be derived," the Court is "left with an ambiguous statute."

*Smith,* —— U.S. at ——, 113 S.Ct. at 2059 (quoting *United States v. Bass,* 404 U.S. 336, 347 (1971); *United States v. Fisher,* 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805)). Nor does the division among jurists interpreting § 924(c)(1) make Anderson's argument any more persuasive. For while some of us think that the statute is quite clear against Anderson's position and others do not think it is so clear, our disagreement relative to the rule of lenity is about whether there is any significant ambiguity. To conclude that the debatability of the question whether the statute is ambiguous in itself renders the statute ambiguous is to hand the appellant a victory without requiring him to win any points.

The traditional canons of statutory interpretation are not to be cast aside merely because a criminal defendant can point to the possibility of a different reading, no matter how implausible, and as the above analysis shows, Anderson has done no more than that. It may even be true, as Anderson claims, that § 924(c)(1) "emphasizes the relationship" between the use of a firearm and the commission of a drug-trafficking crime— whatever that implies; the fact remains that we cannot imagine, and he does not suggest, any way in which the limitation of § 924(c)(1) to the use of a firearm in connection with the commission of some other crime could have been expressed in a way that would not give rise to precisely the same arguments that Anderson now makes. In effect, Anderson would say that a statute providing, for example, that "whoever sells drugs shall be punished" is ambiguous on the question whether one who sells drugs twice may be punished twice, and therefore that the Congress, if it would avoid the rule of lenity must provide: "whoever sells drugs shall be punished *for each sale.*" Indeed, the Court seems (at 1327) to require as much. The rule of lenity

---

**5.** This argument is the only one accepted by a majority of the court, notwithstanding dicta in the Court's opinion that the statute is better read

to prohibit the use of a gun "at any time" during the commission of a drug-trafficking crime. *See* Ct.Op. at 1325–28.

is not a trap to be set for the legislature, however; it is rather a preference for the individual over the state when the burden of a "grievous" ambiguity must be allocated to one or the other.

As brought out at great length during the argument of this case, there is indeed an ambiguity lurking in § 924(c)(1), but it is not whether a defendant may be held to have violated the statute more than once in connection with a single drug-trafficking offense. Rather, it concerns the difficulty of saying, in some factual circumstances, whether a defendant has embarked upon a second (or subsequent) use of a firearm. Unfortunately for Anderson, however, this potential ambiguity is in no way implicated in his case. Especially in light of Anderson's own admission, for the purposes of this appeal, that he used at least four different firearms on four different occasions over the course of the extended drug conspiracy of which he stands convicted, there is simply no room for the argument that any two or more of the four uses constituted but one continuing use.

Nonetheless, much of the argument in this case—oral, on brief, and in the opinion of the Court—concerns whether upholding Anderson's convictions would lead to draconian results in other cases yet to come before us. The claim is that, in view of the broad interpretation we gave to the term "use" in *United States v. Bailey,* 36 F.3d 106, 115 (D.C.Cir.1994) (en banc) (holding that "one uses a gun [for purposes of § 924(c)(1)] whenever one puts or keeps the gun in a particular place from which one ... can gain access to it if and when needed to facilitate a drug crime"), *cert. granted,* —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995), a *drug dealer who habitually relies upon a gun for security could be charged with having "used a firearm" in connection with each of his many sales, and is therefore exposed to an impossibly long prison sentence.*

Two threshold considerations must be kept in mind while addressing this argument. First, it is clear that the Congress is free to provide, and the judiciary therefore constrained to impose, a severe punishment for a crime or series of crimes, limited only by the cruel and unusual punishments clause of the

eighth amendment. *See, e.g., Deal v. United States,* —— U.S. ——, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (upholding 105–year sentence for six violations of § 924(c)(1)). Second, this court may not decide a case that has yet to come before it, and the question before the court today is only whether a defendant who has admittedly engaged in four separate and distinct uses of a firearm in connection with a single drug-trafficking conspiracy may be convicted of having violated § 924(c)(1) four times.

It is not difficult to posit other cases where it may not be clear whether the defendant has "used" a firearm once, twice, or even twenty times. For example, while it is easy to say that a defendant used a firearm once by deciding not to leave it at home but to take it with him to a drug sale, it is not at all obvious that the same defendant used the firearm again if he then decided to brandish it in order to intimidate his buyer. The matter is still more doubtful if he went on to make a second sale without adverting anew to the gun. In short, while it may be relatively easy to say that a gun-toting defendant has used a firearm at least once and has thus violated § 924(c)(1), it is not necessarily easy to say that the same defendant has used a firearm two or more times so that he might be convicted of multiple violations of the statute. As it happens, however, it is clear in Anderson's case that he used a firearm at least four times in connection with a single drug-trafficking conspiracy.

The question that Anderson raises and to which the Court lends its ear is not really one about the appropriate unit of prosecution under the statute as written; as explained above, that is each "use." Rather, the question is that of when, in view of the relatively flexible and "expansive" meaning of the verb "to use," *see Smith,* —— U.S. at ——, 113 S.Ct. at 2058, a defendant may be prosecuted for more than one use under the statute. The rule that Anderson proposes and the Court accepts, which is that there can be no more than one use per drug-trafficking crime, avoids this question only by depriving § 924(c)(1) of its clear content. That option is not lawfully open to us. If there are harder cases than Anderson's lurking on the

horizon, and no doubt there are, then the court's job is to decide them in a principled fashion as they arrive.

The Supreme Court has made clear, in some of the same cases that help to demonstrate that the use of a firearm is the appropriate unit of prosecution under § 924(c)(1), that where there is doubt concerning the number of separate criminal acts a defendant has engaged in, that doubt should be "resolved against turning a single transaction into multiple offenses." *Bell*, 349 U.S. at 84, 75 S.Ct. at 622; *see also Ladner*, 358 U.S. at 178, 79 S.Ct. at 214. Thus, in both *Bell* and *Ladner* the Court rejected the Government's argument that a single act could amount to two violations of the same statute absent a clear statement by the Congress, but it did not call into question the obvious rule that two separate and distinct acts could amount to two violations. *See, e.g., Ladner*, 358 U.S. at 178 n. 6, 79 S.Ct. at 214 n. 6 (noting that if it were found that Ladner had fired two shots at the two officers "we cannot say that it is impossible that [he] was properly convicted of more than one offense, even under the principles which govern here").

Whether an individual act constitutes a separate use is determined under the rule set out in *Blockburger*, as glossed in *Bell:* "[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." *Blockburger*, 284 U.S. at 302, 52 S.Ct. at 181 (quoting WHARTON'S CRIMINAL LAW, 11th ed., § 34). Where there is doubt, however, it is to be "resolved against turning a single transaction into multiple offenses." *Bell*, 349 U.S. at 84, 75 S.Ct. at 622. Thus, the inquiry is, in the first instance, a factual one: "Whether an aggregate of acts constitutes a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information and may have to await the trial based on the facts." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225, 73 S.Ct. 227, 231, 97 L.Ed. 260 (1952) (rejecting a once-per-week unit of prosecution for criminal vio-

lations of the Fair Labor Standards Act absent proof of "wholly distinct managerial decision[s]" to support each violation). Especially where the proscribed act is inherently "continuing"—as is, for example, possession of drugs with intent to distribute, *see United States v. Poston*, 902 F.2d 90, 94 (D.C.Cir. 1990)—a court may be able to hold that upon the particular facts before it there could not be more than one violation of § 924(c)(1). This is not such a case, however; as can be seen from Anderson's conduct, his uses of the four firearms were separate and distinct, not continuing and arguably singular.

In sum, this is not a case for invoking the rule of lenity. As Judge Leventhal once stated:

> Under a general rule of lenity an accused merits the benefit of any reasonable doubt as to legislative intent, but where a man commits a crime with intent, and then expands or modifies his purpose and invades another interest, I see no reasonable basis for inferring a general legislative intent that the change means [no] possibility of a second punishment.

*Irby v. United States*, 390 F.2d 432, 437–38 (D.C.Cir.1967) (en banc) (concurring opinion). While there will be cases in which it is difficult to say when one impulse ended and another began, that is no justification for concluding that separate and distinct uses, and therefore separate and distinct violations, may not occur over the course of an extended drug-trafficking conspiracy, such as that of which Anderson stands convicted.

## IV. Other Court Decisions

Two circuits agree that the Government need not connect each of a defendant's multiple violations of § 924(c)(1) to a separate drug-trafficking crime. *See United States v. Camps*, 32 F.3d 102 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995); *United States v. Lucas*, 932 F.2d 1210 (8th Cir.1991). (*United States v. Freisinger*, 937 F.2d 383 (8th Cir.1991), arguably cast some doubt upon *Lucas* for a time, but *Lucas* has since been expressly approved in *United States v. Edwards*, 994 F.2d 417 (8th Cir.1993), and *United States v. Mabry*, 3 F.3d 244 (8th Cir.1993)).

The highest courts of our two neighboring states have construed statutes similar to § 924(c)(1) as do we to allow multiple firearm convictions in connection with a single related crime. In *Morris v. Commonwealth,* 228 Va. 206, 321 S.E.2d 633 (1984), the statute read: "It shall be unlawful for any person to use or attempt to use any ... firearm ... while committing or attempting to commit ... [a violent felony]." Va.Code Ann. § 18.2–53.1. The defendant in that case shot and killed two people and was convicted of capital murder under a statute making it a crime to kill "more than one person." The court rejected the defendant's argument that he could be convicted of only one firearm violation per connected felony: "The defendant[ ] ... killed two persons and, since the evidence shows he shot both his victims, ... he committed a corresponding number of distinct firearms offenses in the commission of those killings." *Morris,* 321 S.E.2d at 636. In *Webb v. State,* 311 Md. 610, 536 A.2d 1161 (1988), the court distinguished a statute making in a crime to possess a gun from one prohibiting the "use [of] a handgun ... in the commission of any felony." Md.Ann.Code art 27, § 36B(d). "The unit of prosecution is the crime of violence [i.e., the use of the gun as opposed to its possession]. This is so because the act prohibited by [the statute] 'is the use of the handgun....' " *Webb,* 536 A.2d at 1165. No court in a state making it a separate crime to use a firearm during the commission of another offense has ruled that a defendant may be convicted of only one use per connected crime.

Nonetheless, six federal courts of appeal have spoken approvingly of what some of them denominate the "predicate offense test," which states that one drug-trafficking crime can serve as the basis for only one violation of § 924(c)(1). *See, e.g., United States v. Lindsay,* 985 F.2d 666 (2d Cir.1993); *United States v. Privette,* 947 F.2d 1259 (5th Cir.1991); *United States v. Taylor,* 13 F.3d 986 (6th Cir.1994); *United States v. Cappas,* 29 F.3d 1187 (7th Cir.1994); *United States v. Smith,* 924 F.2d 889 (9th Cir.1991); *United States v. Rogers,* 921 F.2d 1089 (10th Cir. 1990). Some of these decisions rest upon the notion that the "purpose [of the statute] is to target those defendants who chose to involve weapons in an underlying narcotics crime;" and conclude for that reason that the drug crime is the appropriate unit of prosecution. *See, e.g., Taylor,* 13 F.3d at 993–94. That approach provides no response to the question of what to do with the "defendants who chose to involve" weapons in their drug dealing four times rather than once.

Other decisions, emphasizing the purported ambiguity of the statute, apply the rule of lenity. *See, e.g., Lindsay,* 985 F.2d at 675–76. While it may well be entirely appropriate to apply the rule of lenity where there is a close question whether a given set of facts reveals one impulse to use a firearm or more, we suggest that those circuits that have relied upon the rule of lenity have stated their holdings overbroadly. Indeed, in most of these cases, there was not more than one separate and distinct use of a firearm in connection with a single drug crime; rather, they generally involved multiple weapons found in a single cache. The courts therefore did not decide whether a defendant could ever be convicted of multiple violations of § 924(c)(1) for multiple but separate uses of a firearm connected to a continuing drug-trafficking offense. *See, e.g., Privette,* 947 F.2d at 1262 (rejecting number of guns as unit of prosecution); *Taylor,* 13 F.3d at 993–94 (same); *Rogers,* 921 F.2d 1089 (same). It remains open to those courts, when confronted squarely with a defendant guilty of multiple separate uses of a gun connected to a single drug (or violent) crime, to reconsider the unit of prosecution under § 924(c)(1). Even in the two cases where there may have been separate and distinct uses of a firearm, as in Anderson's case, the courts rejected only the proposition that a defendant could be convicted of multiple violations of § 924(c)(1) merely for possessing multiple firearms; they did not focus upon multiple uses of those firearms in connection with an extended drug-trafficking offense. *See, e.g., Lindsay,* 985 F.2d at 674; *Cappas,* 29 F.3d at 1190; *see also United States v. Bafia,* 949 F.2d 1465, 1468–70 (7th Cir.1991) (earlier appeal of defendants in *Cappas* ).

Only one other circuit has expressly acknowledged the precise issue presented today and held that the "predicate" drug of-

fense is the appropriate unit of prosecution. *United States v. Hamilton*, 953 F.2d 1344 (11th Cir.1992). What little analysis there seems to be in that decision is rendered all the more suspect because that court apparently misperceived § 924(c)(1) as a sentence-enhancement provision rather than one defining an independent crime, *id.* at 1346, an error that the Court today stops only slightly short of making. *See* Ct.Op. at 1325–26.

### V. Conclusion

This is a troublesome case for a number of reasons. It is easy to confuse the statute at issue with a similar one that the Congress might well have written instead but did not. Moreover, it is tempting to avoid the possibility of having to decide in future cases whether particular facts constitute separate and distinct uses of a gun. Nevertheless, I agree with the Fourth Circuit that the appellant's construction of the statute is "unsupported by either text or logic." *Camps*, 32 F.3d at 109. By accepting it the Court today substitutes a judicially crafted statute for the one produced by the legislature, and thereby denies the public the sanction they would impose, through their representatives, upon those drug traffickers who would not "leave their guns at home." I therefore respectfully dissent.