**UNITED STATES of America**

**v.**

**Nelson Luis DIAZ, Appellant.**

No. 08–4088.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 2009.

Filed Jan. 15, 2010.

Ronald A. Krauss, (Argued), Office of Federal Public Defender, Harrisburg, PA, for Appellant.

Michael A. Consiglio, (Argued), Eric Pfisterer, Office of United States Attorney, Harrisburg, PA, for Appellee.

Before: SLOVITER, FUENTES, and SMITH, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Nelson Diaz was convicted by a jury of possession of a firearm in furtherance of drug trafficking "[o]n or about March 29, 2006," in violation of 18 U.S.C. § 924(c) (Count I), App. at 19; possession with intent to distribute heroin "[i]n or about November 1, 2005, through March 29, 2006," in violation of 21 U.S.C. § 841(a)(1) (Count II), App. at 20; and an additional possession of a firearm in furtherance of drug trafficking "[i]n or about January 2006 and before March 29, 2006," in violation of 18 U.S.C. 924(c) (Count III), App. at 21. The District Court sentenced Diaz to a term of 480 months imprisonment—the sum of consecutive sentences of 120 months for each firearm count and 240 months for possession with intent to distribute heroin.

Diaz appeals on two grounds. First, he contends that his convictions and consecutive sentences for the two firearm charges violate the Double Jeopardy Clause. Second, Diaz asserts that the District Court abused its discretion in denying his motions for a mistrial which he filed because the Court admitted the testimony of three Government witnesses that they feared retaliation for their testimony.

## I.

### Factual Background

#### A. The Shooting of Albert Pierce

The underlying facts are not contested. Diaz sold heroin at the Hall Manor housing project in Harrisburg beginning in November 2005 and continuing through late March 2006, at a price that undercut that of Albert Pierce, another drug dealer operating out of Hall Manor. In March 2006, Pierce physically assaulted Diaz, and soon thereafter, on or about March 29, 2006, Diaz and others confronted Pierce. Shots were fired by several people, including Diaz, and Pierce was fatally wounded. It is not known who fired the fatal shot.[1]

---

1. Pierce's death resulted from a gunshot by an unidentified triggerman. The Government

Diaz was indicted in April 2007 on one count that he possessed, carried, and used a firearm in furtherance of a heroin-trafficking offense, in violation of 18 U.S.C. § 924(c), on or about March 29, 2006, and a second count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). A superseding indictment filed five months later retained the two original counts and added, as a third count, another § 924(c) charge that Diaz possessed, carried, and used a firearm in furtherance of a drug trafficking offense "[i]n or about January 2006 and before March 29, 2006...." App. at 19–20. Diaz pled not guilty to the superseding indictment, and the case proceeded to trial.

### B. The Trial Proceedings

In its jury instructions, the Court explained that the jurors had to first consider whether Diaz had committed the underlying drug-trafficking offense contained in Count II of the superseding indictment. The Court further instructed that if the jury found in the affirmative as to that question, it could then consider whether Diaz committed the firearm charges in Counts I and III. The Government sought to prove at trial that Diaz had used firearms for different purposes throughout his drug-trafficking activities, but aside from the separate dates contained in Counts I and III, the Court's jury instructions did not specify distinct purposes with regard to the separate § 924(c) charges.[2] The jury quickly returned a guilty verdict on all three counts.

On appeal, Diaz does not contest the facts alleged in the indictment. In other words, he concedes there was sufficient evidence to support the heroin distribution count and that he possessed a firearm on at least two occasions, one each during the dates specified in Counts I and III. Instead, he raises a legal challenge to his convictions on the two firearms counts. He also contends that the District Court abused its discretion in denying his motion for a mistrial on the ground that the testimony of three Government witnesses that each feared becoming known in their community as "a snitch," App. at 54, prejudiced the jury by implying that Diaz had threatened the witnesses.

### C. The Sentence

In the presentence report ("PSR"), the Probation Office found that Diaz was a career offender, that the 2007 Sentencing Guidelines provided for a sentence in the range of 210 to 262 months for the drug-trafficking violation in Count II, and that Counts I and III mandated an additional consecutive sentence of 360 months—60 months for Count I and 300 months for Count III, for a total recommended range of 570–622 months. The calculation regarding the firearm offenses was based on U.S.S.G. § 4B1.1, and 18 U.S.C. §§ 924(c)(1)(A)(i) & (C)(i), which require a minimum sentence of five years (60 months) for one § 924(c) violation, a minimum consecutive sentence of twenty-five years (300 months) for each subsequent § 924(c) violation, and that these sentences run consecutively to the term imposed for the underlying drug offense.

Diaz objected to the PSR on the ground that punishing him under § 924(c) with a five year term for one of the firearm of-

---

states that "[t]he testimony conflicted concerning who shot first and how many shooters there were...." Appellee's Br. at 7.

**2.** The jury instructions said, in relevant part: "[T]he government alleges that Mr. Diaz violated [§ 924(c)] in two ways. [It] alleges that

Mr. Diaz violated [§ 924(c)] by using or carrying a firearm—this is the first way—using or carrying a firearm during and in relation to a drug trafficking crime; and the second way, possessing a firearm in furtherance of a drug trafficking crime." Supp.App. at 467.

fenses and an additional twenty-five year term for the second firearm offense based on the same predicate offense subjected him to successive punishments for the same offense in violation of the Double Jeopardy Clause. The District Court agreed, relying on the weight of authority from other circuits and referring to this court's opinion in *United States v. Casiano*, 113 F.3d 420 (3d Cir.1997).[3] The District Court predicted that we would require convictions on separate predicate offenses before a district court could constitutionally find a "second or subsequent conviction" and impose a twenty-five year consecutive sentence under § 924(c)(1)(C).

Although the District Court sustained Diaz's objections to the PSR and agreed not to impose an additional twenty-five year sentence under § 924(c)(1)(C), it nonetheless imposed two ten year consecutive sentences for the § 924(c) convictions. Diaz argued that the court was still improperly imposing multiple penalties for a single offense, but the District Court was unpersuaded. It stated that double jeopardy principles merely precluded counting multiple § 924(c) offenses charged in connection with a single predicate offense as "second or subsequent" convictions under § 924(c)(1)(C), which would automatically trigger additional twenty-five year consecutive sentences. On appeal, Diaz raises as his principal issue whether the District Court may impose two consecutive sentences for firearm possession in furtherance of drug trafficking when he was convicted on only one predicate drug trafficking offense.

## II.

### Jurisdiction and Standards of Review

■ The District Court had jurisdiction under 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. This court's review of a district court's interpretation of the Federal Sentencing Guidelines and constitutional questions is plenary. *United States v. McKoy*, 452 F.3d 234, 236 (3d Cir.2006). We review the District Court's denial of Diaz's motions for mistrial for abuse of discretion. *United States v. Rivas*, 493 F.3d 131, 139 (3d Cir.2007). Moreover, "such discretion is construed especially broadly in the context of Rule 403." *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir.2007).

## III.

### Discussion

#### A. Double Jeopardy and § 924(c)

■ We turn first to Diaz's argument that his sentence to two consecutive terms of 120 months each for the § 924(c) convictions is "greater punishment than the legislature intended," and is thus prohibited by the Double Jeopardy Clause. Appellant's Br. at 20 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)).

■ The constitutional question in this case—whether the § 924(c) convictions and consecutive sentences violate the Double Jeopardy Clause—turns on legislative intent. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter*, 459 U.S. at 366, 103 S.Ct. 673. It is thus incumbent on us first to analyze the statutory text.

Section 924(c) provides, in pertinent part:

---

**3.** *Casiano* does not govern this case because the Government there charged more predi-cate crimes than § 924(c) violations. 113 F.3d at 426.

[A]ny person who, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years; ... [and] if the firearm ... is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, ... to a term of imprisonment of not less than 10 years; ... [and if the firearm] ... is a machinegun ..., to a term of imprisonment of not less than 30 years.... In the case of a second or subsequent conviction under this subsection, the person shall ... be sentenced to a term of imprisonment of not less than 25 years.... [N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment....

18 U.S.C. § 924(c)(1)(A)(i), (B)(i), B(ii), (C)(i) & (D)(ii).

Our analysis must begin by deciding what is the proper "unit of prosecution" for § 924(c). *See United States v. Pollen,* 978 F.2d 78, 85 (3d Cir.1992). Most of the courts of appeals that have addressed this issue agree with Diaz that it is the underlying predicate crime, i.e., the drug distribution count. Indeed, nine courts of appeals have so held. *See, e.g., United States v. Rodriguez,* 525 F.3d 85, 111 (1st Cir.2008); *United States v. Baptiste,* 309 F.3d 274, 279 (5th Cir.2002). The Government differs, arguing that the statute's unit of prosecution is each instance in which a defendant uses or carries a firearm during and in relation to a drug-trafficking offense, or each instance in which a defendant possesses a firearm in furtherance of such an offense.

The Second Circuit undertook a detailed analysis of the issue in *United States v. Lindsay* before holding that "a defendant who uses multiple firearms in relation to a single drug-trafficking crime may be charged with only one violation of § 924(c)(1)." 985 F.2d 666, 676 (2d Cir. 1993). The court examined the statutory text and stated that because § 924(c) requires "some relation or connection between the firearm and the underlying crime," Congress likely considered the appropriate unit of prosecution to be the underlying drug-trafficking offense. *Id.* at 673 (quoting *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988)). Even so, the court recognized that the legislative history of § 924(c) was meager and the statutory language ambiguous, and therefore resolved the issue by relying on the rule of lenity on behalf of the defendant. *Id.* at 676.

The Sixth Circuit relied on the *Lindsay* decision when it was presented with an appeal by a defendant who was convicted of one underlying drug offense and two counts under § 924(c). *See United States v. Taylor,* 13 F.3d 986, 993 (6th Cir.1994). The court framed the issue as: "whether or not § 924(c) allows multiple convictions and sentences in relation to a single predicate drug-trafficking offense." *Id.* at 992. It resolved that question by analyzing the statutory text, particularly the "during and in relation to" language, and found that § 924(c) " 'emphasizes the relationship between the firearms and the underlying drug-trafficking crime, rather than the individual firearms....' " *Id.* at 993 (quoting *Lindsay,* 985 F.2d at 673). It thus held that one of the two firearms convictions could not be sustained. *Id.* at 994.

Two years later, the D.C. Circuit, sitting en banc, considered the same issue in *United States v. Anderson,* 59 F.3d 1323 (D.C.Cir.1995). The opinion for the plurality noted that § 924(c) can be understood in one of two ways. It could "mean either that (1) *each time* a defendant uses [or

carries] a firearm in relation to a crime he commits a separate crime, or (2) that if during the course of a crime a defendant uses or carries a firearm *at any time,* he commits a separate crime." *Id.* at 1326 (quotations omitted). After closely parsing the text, a plurality of the court found the latter interpretation to best reflect congressional intent. *Id.* at 1326–27 ("[i]t appears to us that the draftsmen were not employing the word 'uses' to imply that each discrete act that might be called a 'use' constitutes a separate crime.").

In support, the opinion noted that inclusion of the verb "carries" in the statute suggested that Congress was referring to a "continuing activity," rather than a discrete act. *Id.* at 1327. Moreover, it considered that the enhancement for a "machinegun" in § 924(c)(1)(B)(ii) suggested that Congress focused on the underlying drug crime "whose character is irrevocably changed when the defendant uses or carries a gun." *Id.* The *Anderson* court also stated that "Congress spoke in terms of the word 'the' because it did not regard as significant the number of times guns, or the number of guns that were carried or used during and in relation to the predicate crime." *Id.* Finally, the opinion reasoned that Congress could have easily inserted the words "each time" or "on each occasion" to clarify its intent. *Id.* Because Congress did not, the plurality found it "virtually inconceivable" that Congress had contemplated that a defendant would be charged with multiple § 924(c) violations "appended to one underlying drug crime." *Id.*

The result reached in *Anderson* has also been reached by many other circuits. For example, the Seventh Circuit reversed two of the defendant's three convictions under § 924(c) because the defendant had only been convicted of and sentenced on two counts of drug trafficking. *See United States v. Cappas,* 29 F.3d 1187, 1195 (7th Cir.1994). The court stated that "each § 924(c) count needs to be tied to a different ... drug-trafficking crime" *id.* at 1189, and that "separate [§ 924(c) ] convictions are permissible so long as the court's instructions require the jury to connect each gun use to a separate predicate offense." *Id.* at 1190. The Ninth, Tenth, and Eleventh Circuits have all agreed with that premise. *See United States v. Hamilton,* 953 F.2d 1344, 1346 (11th Cir.1992); *United States v. Smith,* 924 F.2d 889, 894–95 (9th Cir.1991); *United States v. Henning,* 906 F.2d 1392, 1399 (10th Cir.1990).

More recently, other circuits have followed these cases with little additional reasoning. For example, in *Rodriguez,* the defendant was convicted of one count of drug conspiracy and two separate counts under § 924(c). 525 F.3d 85 at 111. The only difference between the two § 924(c) counts was that the two incidents involving firearms occurred on different dates. *Id.* When the defendant appealed, the Government conceded that it was improper to impose two consecutive sentences under § 924(c). *Id.* Even with the Government's concession, the court proceeded to cite many of the cases Diaz also cites, as well as its own precedent which held that imposing "multiple consecutive sentences under subsection 924(c) for using multiple weapons during a single predicate crime 'would impinge upon fundamental double jeopardy principles.'" *Id.* (quoting *United States v. Pena–Lora,* 225 F.3d 17, 32 (1st Cir.2000)).

To be sure, two circuits have taken the minority view. The Eighth Circuit held that the plain language of the statute favors finding that § 924(c)'s unit of prosecution is the individual "uses" to which firearms are put throughout the duration of an underlying crime. *See United States v. Lucas,* 932 F.2d 1210, 1222 (8th Cir.1991). Given its conclusion about the statutory

text, that court held that multiple § 924(c) convictions arising out of a single, predicate crime do not offend double jeopardy principles, so long as the Government proves that firearms were put to different uses during that predicate crime. *Id.* at 1223.

Similarly, the Fourth Circuit has also held that separate § 924(c) convictions may arise from one predicate offense. *See United States v. Camps,* 32 F.3d 102, 108–09 (4th Cir.1994). It concluded, partly on policy grounds, that the "use" and "carry[ing]" of a firearm are the units of prosecution. *Id.; see also id.* at 108 ("[i]f multiple uses of … weapons … could not be punished with multiple consecutive sentences, there would be little deterrence against armed drug dealers using those weapons repeatedly during a lengthy drug conspiracy.").

The position of these two courts is not significantly different from that taken by the five-judge minority of the D.C. Circuit which concluded that the operative verbs in the statute defined its units of prosecution. *See Anderson,* 59 F.3d at 1338 (Ginsburg, J., dissenting). The opinion for the dissenters stated: "[t]he rule that a crime is committed each time a defendant performs the proscribed act is so obvious that courts rarely pause to comment upon it." *Id.* (Ginsburg, J., dissenting). The statement is surprising as it was not so "obvious" to the nine courts of appeals that adopt the contrary view. Moreover, the issue is not whether a defendant violates § 924(c)(1) each time he commits a crime by using a firearm in connection with a drug-trafficking crime. Instead, the question is whether a defendant has committed more than one § 924(c) violation when only one drug trafficking offense has been proven. We agree with the *Taylor* court when it stated, "[t]he purpose of § 924(c)(1), as explained extensively in *Lindsay,* is to target those defendants who choose to involve weapons in an underlying narcotics crime…. Consequently, the predicate offense, not the firearm, is the object of § 924(c)(1)." *Taylor,* 13 F.3d at 993–94.

The difference of opinion among the circuits (and within the D.C. Circuit) suggests that § 924(c)'s statutory text may reasonably be susceptible of differing interpretations. We might expect elucidation as to congressional intent from the legislative history but there is some support for both positions in the legislative history of § 924(c). We are aware that there is some disdain for using legislative history as a tool to help ascertain the intent behind ambiguous statutory language. *See, e.g., United States v. R.L.C.,* 503 U.S. 291, 307, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) ("In my view it is not consistent with the rule of lenity to construe a textually ambiguous penal statute against a criminal defendant on the basis of legislative history.") (Scalia, J., concurring). Nonetheless, we refer to that history briefly to determine whether congressional intent is ascertainable, as we have done in the past when confronted with an ambiguous statute. *See United States v. Tupone,* 442 F.3d 145, 152 n. 5 (3d Cir. 2006) (noting that the "rule of lenity applies only where a statute is found to be ambiguous upon review of the text, structure, *legislative history,* and policies of the statute") (emphasis added).

The Second Circuit in *Lindsay* found support for the conclusion that § 924(c)'s unit of prosecution is the predicate crime in a statement by Representative Poff, an original sponsor of an amendment to a bill that became § 924(c), that the purpose of the amendment was:

> to persuade the man who is tempted to commit a Federal felony to leave his gun at home. Any such person should understand that if he uses his gun and is caught and convicted, he is going to jail.

He should further understand that if he does so a second time, he is going to jail for longer.

*Lindsay,* 985 F.2d at 676 (quoting 114 Cong. Rec. 22,231 (1968)).

Although the *Lindsay* court read this statement to show that Congress "apparently was concerned more with the number of underlying drug-trafficking crimes committed by the defendant, than with the number of firearms used in relation to any particular offense," *Lindsay,* 985 F.2d at 676, we do not find Representative Poff's statement enlightening as to the question at hand. Similarly unhelpful are other statements by Representative Poff referred to by the Government, such as the following statement also quoted by the *Anderson* minority:

> The penalties in this amendment were not addressed to the base felony ... The amendment was addressed to the use of a firearm in the commission of the base felony. It was designed to persuade the man who has decided to set forth on a criminal venture to leave his gun at home.

*Anderson,* 59 F.3d at 1339 (Ginsburg, J., dissenting) (internal citations omitted).

The Government reads this statement to show that "Congress intended to prohibit each event of possession, usage or carrying...." Appellee's Br. at 30. On the other hand, Representative Poff's statement refers to gun possession in relation to a "criminal venture," which could be interpreted to mean that some, underlying offense must exist before the use of a gun violates the statute. *See United States v. Bernier,* 954 F.2d 818, 820 (2d Cir.1992) ("the legislative history makes clear the intent of Congress to deter multiple commissions of a crime with a gun."). We conclude only that the legislative history is

as ambiguous as the statutory text, and it is thus not enlightening as to Congress' intent on the specific question before us.

We therefore agree with the resolution of the D.C. Circuit that the ambiguity in the text of § 924(c) and in its legislative history require that courts follow the rule of lenity. *See Anderson,* 59 F.3d at 1333 ("[w]e are led, then, to the ultimate conclusion that at a very minimum, § 924(c)(1) is ambiguous. The rule of lenity must, therefore, govern application of the statute.") [4]; *see also Lindsay,* 985 F.2d at 673 ("[s]ince Congress failed to specify the firearm as the appropriate unit of prosecution under § 924(c)(1), we invoke the rule of lenity ....") (internal citation omitted).

The concurring opinion of Judge Randolph of the D.C. Circuit stated that it is the rule of lenity that tips the otherwise evenly-balanced scales in favor of the criminal defendant. *See Anderson,* 59 F.3d at 1335 (Randolph, J., concurring). Applying that principle to § 924(c)(1), he stated:

> The statute yields barely a clue about how to apply it to drug dealers who routinely arm themselves as they go about their awful business and, when caught, are charged only with one continuing drug offense. Reading and re-reading my colleagues' skillful efforts to parse the language only plunges me deeper into the fog. The arguments on both sides are pretty much in equipoise. The rule of lenity is, as I see it, the one path out.

*Id.*

 We agree. We cannot pretend that the statutory text and legislative history explicate congressional intent in this context. Although it is true that the rule of lenity is reserved for statutes with griev-

---

4. Indeed, as Judge Ginsburg pointed out in his dissenting opinion, the rule of lenity was the only principle of law accepted by a major-ity of the D.C. Circuit as a basis for its en banc decision in *Anderson,* 59 F.3d at 1340 n. 5 (Ginsburg, J., dissenting).

ous ambiguity, we can say without hesitation that "[a]fter 'seiz[ing] everything from which aid can be derived' " we are " 'left with an ambiguous statute.' " *Smith v. United States*, 508 U.S. 223, 239–40, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (quoting *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)) (further internal quotations and citations omitted). Application of the rule of lenity is particularly appropriate in the context of § 924(c) because of its mandatory consecutive sentences and extremely harsh penalties for subsequent convictions.

Under the Government's position, there would be no limitation on its ability to charge a defendant with a new § 924(c) for each instance in which he used, carried, or possessed a gun as he sold drugs, which, under the statute's "second or subsequent" clause, could quickly add up to life imprisonment. The Second Circuit put it well when it said, "if congress intended to impose such a draconian penalty[,] . . . surely it would have said so in clear language." *Lindsay*, 985 F.2d at 674.

■ For the reasons set forth, we will vacate one of Diaz's two § 924(c) convictions and remand to the District Court for re-sentencing. *See Taylor*, 13 F.3d at 994 (prescribing the appropriate remedy in this context). As the Supreme Court stated in *Bass*, 404 U.S. at 348, 92 S.Ct. 515, "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity . . . . [t]hus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."

B. Motion for Mistrial and Federal Rule of Evidence 403

■ We dispose of Diaz's second ground for appeal more easily. He contends that the District Court should have granted his motions for a mistrial in light of the testimony of Government witnesses that they feared what members of their community would do to them in retaliation for their cooperation with the Government. Diaz bases this argument on Rule 403 of the Federal Rules of Evidence, which directs district courts to exclude evidence when the danger of unfair prejudice substantially outweighs its probative value.

Arguably there was little probative value to the testimony as it only helped explain why certain Government witnesses were uncooperative, but its potential for prejudice was unsubstantial. None of the testimony stated directly that Diaz himself was violent. Rather, the witnesses merely stated they feared being labeled a "snitch" in their community. The overall effect of this testimony reflected the dangerousness of the Hall Manor housing project.

■ Perhaps most important, we owe the District Court "very substantial discretion" in its ruling on whether to admit testimony under Rule 403. *United States v. Long*, 574 F.2d 761, 767 (3d Cir.1978). A district court's balancing under Rule 403 will only be reversed if its analysis and conclusions are "arbitrary or irrational." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir.2000) (quotation and citation omitted).

We cannot so state here. When one Government witness began testifying about being "labeled as a snitch" in his neighborhood, App. at 37, the District Court conferred with counsel at sidebar, clarified that the testimony did not involve an allegation of a threat from Diaz himself, and found that any particular witness' subjective belief that s/he will be at risk in the community after testifying for the Government did not warrant a mistrial. Diaz did not object the second time the issue arose. On the third occasion, when a witness testified to being "afraid, because [she] live[s]

in Hall Manor ... [a]nd ... the detective ... can't even protect [her]," the District Court stopped the witness' testimony upon Diaz's objections. We have no basis to disturb the judgment of the District Court that the danger of unfair prejudice from this testimony did not substantially outweigh its probative value.

## IV.

### Conclusion

For the reasons set forth, we will affirm the District Court's denial of Diaz's motion for a mistrial. We will vacate one of the two § 924(c) violations and remand this case to the District Court for re-sentencing.