**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2323
_____

UNITED STATES OF AMERICA

v.

ALTON COLES
a/k/a Naseem Coles

Alton Coles,
　　　　　Appellant
_____

No. 10-4373
_____

UNITED STATES OF AMERICA

v.

TIMOTHY BAUKMAN
a/k/a Tauheed Baukman
a/k/a Tim Gotti
a/k/a T Dog

Timothy Baukman,
　　　　　Appellant


_____

No. 10-4393
_____

UNITED STATES OF AMERICA

v.

JAMES MORRIS a/k/a "J"

James Morris,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Nos. 2-05-cr-00440-001, 2-05-cr-00440-008 & 2-05-cr-00440-013
District Judge:  Hon. R. Barclay Surrick

_____

Submitted Under Third Circuit LAR 34.1(a)
January 7, 2014

_____

Before: SMITH, SHWARTZ, and SCIRICA, Circuit Judges

(Filed: January 16, 2014)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

Alton Coles, Timothy Baukman, and James Morris appeal their convictions and

sentences arising from their participation in a large cocaine and crack distribution

conspiracy.  For the reasons set forth below, we will affirm the judgments on all

contested counts.[1]

_____

[1] In accordance with United States v. Diaz, 592 F.3d 467 (3d Cir. 2010), and without opposition, we will
vacate Coles's conviction on two counts.

2

**I.**

As we write primarily for the parties, we recite only the essential facts and procedural history. Coles, Baukman, and Morris were tried jointly in the Eastern District of Pennsylvania along with three other co-defendants. The evidence showed that Coles was the leader of an organization that processed, packaged, and distributed cocaine and cocaine base (crack), and Baukman was his right-hand man. Morris supplied Coles and Baukman with a significant amount of the cocaine that they distributed.

All three individuals were convicted on multiple counts.[2] The District Court sentenced Coles to life imprisonment plus a consecutive sentence of 55 years, Baukman to 360 months' imprisonment, and Morris to life imprisonment. All three appealed.[3]

---

[2] Coles was convicted of conspiracy in violation of 21 U.S.C. § 846 (Count 1), engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848 (Count 2), three counts of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 68, 70, and 72), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count 59). Coles was also convicted of a variety of money laundering and drug offenses that are not implicated in this appeal.

Baukman was convicted of the conspiracy offense (Count 1), the CCE offense (Count 2), one count of maintaining a storage facility in violation of 21 U.S.C. § 856(a)(2) (Count 61), two counts of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 63, 68), thirty-two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) ("promotion" money laundering) (Counts 89-120), and fifty-five counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) ("concealment" money laundering) (Counts 121-175). The District Court subsequently dismissed the second § 924(c) count (Count 68) as duplicative. Baukman was also convicted of a violation of 21 U.S.C. § 841(a)(1) (Count 62), which is not implicated in this appeal.

Morris was convicted of conspiracy (Count 1) and four counts of using a telephone to facilitate a drug conspiracy in violation of 21 U.S.C. § 843(b) (Counts 52-55). Morris was acquitted of a § 924(c) offense (Count 67).

[3] The District Court had subject matter jurisdiction over these cases pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

## A. Timothy Baukman[4]

Baukman challenges the sufficiency of the evidence to support his convictions for participating in a CCE, possession of firearms in furtherance of a drug trafficking conspiracy, money laundering, maintaining a storage facility for a controlled substance, and conspiracy. He also argues that his sentencing was improper because the jury did not find the amount of drugs attributable to him personally.

**1. Conviction for Continuing Criminal Enterprise**

Baukman argues that there was insufficient evidence to support his conviction for engaging in a CCE in violation of 21 U.S.C. § 848(a). To obtain a conviction for this offense, the Government was required to prove: (1) a felony violation of the federal narcotics law; (2) as part of a continuing series of violations; (3) in concert with five or more persons; (4) with respect to whom the defendant occupies a position of organizer, supervisor, or any other position of management; (5) from which he derives substantial income or resources. United States v. Grayson, 795 F.2d 278, 283-84 (3d Cir. 1986).

We apply a "particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). We view the evidence in the light most favorable to the government, and we "will sustain the verdict if 'any rational trier of fact could have found the essential

---

[4] Baukman moved in this Court to waive counsel and proceed pro se, and to file a pro se supplemental brief, which was denied because he refused to sign a waiver of counsel form and attest that his waiver was knowing and voluntary. Baukman moved for appointment of new counsel by letter postmarked on October 11, 2013. Under this Court's local rules, the most recent counsel of record from the District Court must continue on appeal absent extraordinary circumstances. 3d Cir. LAR Misc. 109.1. Because Baukman's motion was filed after briefing was complete in this case and he has not identified any extraordinary circumstances, we will deny his motion.

elements of the crime beyond a reasonable doubt.'" Id. (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996)).

Baukman contends that the Government did not prove the third and fourth elements: that he was an organizer or supervisor of five or more individuals. The so-called "organizer or supervisor" and "numerosity" requirements are "obvious manifestation[s] of Congress's concern to fight the growth of large-scale profit-making drug enterprises." United States v. Aguilar, 843 F.2d 155, 157 (3d Cir. 1988) (quotation marks, citations, and alterations omitted). These requirements thus "distinguish minor enterprise employees from those who conceive and coordinate enterprise activities." Id. (quotation marks and citation omitted). The five individuals need not be "under the direct and immediate control or supervision of [the] defendant." United States v. Ricks, 882 F.2d 885, 891 (4th Cir. 1989). Moreover, the defendant "need not have had personal contact with each of the five persons involved," and "the delegation of managerial and supervisory duties will not defeat an individual's ultimate status as organizer, supervisor, or manager." United States v. Apodaca, 843 F.2d 421, 426 (10th Cir. 1986).

Baukman argues that the government failed to prove that he was an organizer or supervisor because the evidence consisted only of testimony of co-conspirators that Baukman was Coles's trusted associate and that Baukman merely engaged in some drug transactions with the other individuals. While a mere buyer-seller relationship is insufficient to support a CCE conviction, see id., the evidence here, viewed in the light most favorable to the prosecution, supports the conclusion that he was a manager of at least five individuals.

5

Kristina Latney, Coles's paramour, testified that Baukman was Coles's "right hand man," Supp. App. 333, in the drug organization. Moreover, the evidence showed that Baukman: (1) leased the Essex Avenue apartment, which was used to store, process, and package cocaine, in the name of his four-year-old son, and paid the rent and utilities from an account in his son's name; (2) consulted with Coles about the pricing of drugs, and work conditions, including the fact that one conspirator had not worn gloves or a mask while preparing the cocaine and subsequently tested positive for drug use; (3) was contacted to secure a lawyer when a conspirator needed one; and (4) supervised at least two street-level managers, Custis and "Bub," in part by providing cocaine on a consignment basis; see United States v. Becker, 892 F.2d 265, 267 (3d Cir. 1989) ("A consignment arrangement has been held to give the provider of the substance the necessary supervisory control of the participants."). These managers, Custis and "Bub," in turn supervised numerous street-level sellers, including Troy Wilson, Leroy Perkins, Barry White, Alfonso Kearny, as well as two others referred to as "Ezz," and "Seneca." In short, there was considerable evidence from which the jury could conclude that Baukman was a manager or supervisor of at least five people involved in this drug enterprise. Accordingly, we will affirm the conviction on the CCE count.

## 2. Conviction under 18 U.S.C. § 924(c)

Baukman also challenges the sufficiency of the evidence to support his conviction on Count 63 for possession of firearms in furtherance of the drug trafficking conspiracy charged in Count 1. Baukman contends that there is an insufficient nexus between the guns, which were found during a search of Baukman's personal residence on School

6

House Lane in Philadelphia, Pennsylvania, and the drug trafficking conspiracy, because no controlled substances were found in the residence with the guns and no direct evidence links the residence to drug trafficking.

We apply a non-exclusive list of eight factors to determine if there is a sufficient nexus between the possession of guns and the predicate crime to warrant a conviction under § 924(c). United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004). Those are:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Id. (citation omitted).

Applying these factors, there was sufficient evidence linking the guns to the drug trafficking. The guns were found near bundles of cash and a money counting machine. See United States v. Reyes, 930 F.2d 310, 314 (3d Cir. 1991) (affirming a § 924(c) conviction where the guns were found near drug money but not near drugs). Moreover, the guns were accessibly located in closets in the entryway and living room, the guns included a fully automatic machine gun and a semi-automatic pistol, the serial number on one gun had been removed, and, while the guns were not loaded, they were stored with fully-loaded magazines. On these facts, together with evidence that Baukman delivered drug money to Coles, the jury had sufficient evidence to conclude that the money found was from drug sales and his "possession of the firearm[s] advanced or helped forward [Baukman's] drug trafficking crime." Sparrow, 371 F.3d at 853.

7

## 3. Conviction for Money Laundering

Baukman's assertion that the evidence was insufficient to support his conviction for thirty-two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (promotion money laundering) involving the lease payments for the Essex Avenue apartment (Counts 89-120), and fifty-five counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering) involving the lease payments for his residence on School House Lane and his car (Counts 121-175) also fails.

The elements of promotion money laundering are: (1) the defendant knowingly conducted or attempted to conduct a financial transaction; (2) the defendant knew that the funds or property involved in the financial transaction involved the proceeds of some form of unlawful activity; (3) the transaction in fact involved the proceeds of specified unlawful activity; and (4) the defendant engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i); United States v. Omoruyi, 260 F.3d 291, 294 (3d Cir. 2001). The elements of concealment money laundering are identical as to the first three elements but the fourth element requires instead that the defendant knew "that the transactions were designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." Id. at 294-95 (citing 18 U.S.C. § 1956(a)(1)(B)(i)).

On appeal, Baukman argues that the Government failed to prove the fourth element as to each charge—his intent to promote drug trafficking by the Essex Avenue apartment lease payments, and concealment of the drug trafficking proceeds by placing

8

his School House Lane residence and car in the name of nominees. In his Rule 29 motion, however, Baukman moved for judgment of acquittal on the money laundering counts on the grounds that the Government had not established that he engaged in the transaction using illegal funds—that is, he challenged the second and third elements of the offenses. The argument he now raises therefore was not preserved by a timely Rule 29 motion, and we will review the conviction for plain error. United States v. Thayer, 201 F.3d 214, 219 (3d Cir. 1999). A defendant bears the burden of establishing plain error under Fed. R. Crim. P. 52(b), and must prove that: (1) the district court erred; (2) the error was "plain," meaning that it was "clear" or "obvious"; and (3) the error affected substantial rights. Johnson v. United States, 520 U.S. 461, 466-67 (1997) (citing United States v. Olano, 507 U.S. 725, 732 (1993)). If these three prongs are met, then the appellate court may "exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 467 (quotation marks, citations, and alterations omitted). A conviction based on insufficient evidence is plain error "only if the verdict constitutes a fundamental miscarriage of justice." Thayer, 201 F.3d at 219 (quotation marks and citation omitted).

Here, there was no miscarriage of justice, as the Government's evidence was more than sufficient to support the jury's verdict. First, there was considerable evidence from which the jury could properly infer that Baukman made the lease payments on the Essex Avenue apartment with the intent to promote drug trafficking. The evidence established that Baukman rented the Essex Avenue apartment in his young son's name and paid the

9

bills for the apartment through an account in the child's name,[5] and that Baukman kept personal items at the apartment and visited it. In addition, law enforcement officers found evidence of drug production in the apartment, including masks, goggles, latex gloves, cutting agents to dilute the cocaine, and drug packaging paraphernalia, as well as firearms. Accordingly, there was sufficient evidence for the jury to infer that Baukman made the lease payments with the intent to promote drug trafficking.[6]

Second, the Government introduced evidence that the School House Lane residence was placed in the name of Baukman's young son and paid for by checks drawn on an account in the son's name, and the car was placed in the name of Baukman's cousin, who testified that she never used the car and that Baukman regularly drove the car. We have previously observed that "[e]vidence of a purpose to conceal can come in many forms, including . . . using third parties to conceal the real owner . . . ." United States v. Richardson, 658 F.3d 333, 340 (3d Cir. 2011); see also United States v. Davis, 430 F.3d 345, 359 (6th Cir. 2005) (relying on the defendant's use of nominee owners as evidence of concealment money laundering). The jury was entitled to infer from Baukman's role in a drug organization that his use of nominees to lease his residence and car was intended to conceal his use of illegal funds. Cf. United States v. Mitchell, 31

---

[5] An IRS special agent testified that approximately $150,000 in cash was deposited into the account in Baukman's son's name, during a time period in which Baukman's and Coles's legitimate business, a record and entertainment company, lost over $160,000, and during a time when Baukman did not file income tax returns. In light of this fact and the ample evidence of Baukman's participation in the lucrative drug enterprise, the jury could infer that the cash deposits and money used to pay the rent were the proceeds from drug distribution.

[6] Baukman also asserts that his conviction presents the merger problem identified in United States v. Santos, 553 U.S. 507 (2008). He is incorrect. Unlike the lottery payments in Santos, where the winning bettor's payment involved the receipts of the illegal lottery, id. at 515, paying rent for the apartment is not integral to drug trafficking. United States v. Richardson, 658 F.3d 333, 340 (3d Cir. 2011) ("Purchasing real property is neither integral to nor an expense associated with the crime of drug trafficking.").

F.3d 628, 631 (8th Cir. 1994) (relying in part on a defendant's participation in a drug conspiracy to establish the defendant's motive for engaging in money laundering).

For these reasons, we will affirm Baukman's convictions for all eighty-seven counts of money laundering.

### 4. Conviction for Maintaining a Storage Facility[7]

Baukman challenges his conviction on Count 61 for managing and controlling the Essex Avenue apartment and "knowingly and intentionally . . . mak[ing] available for use . . . the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a)(2). Specifically, he contends that the Government did not establish his knowledge of drug activity at the Essex Avenue apartment. As explained above, there was significant evidence that Baukman rented the apartment, paid bills for it, kept personal items there, and visited it. Baukman rented the apartment for his cousin to reside and work in. Specifically, there was evidence Baukman "coach[ed]" his cousin to cook crack, Supp. App. 701, and evidence of crack production was found there. Agents discovered masks, goggles, latex gloves, cutting agents to dilute the cocaine, and drug packaging paraphernalia in the apartment. Indeed, one agent observed white powder "sprayed across some parts of the carpet in the living room," and testified that the powder came up from the carpet when the agents walked through the room. Supp. App. 44-45. Finally, agents searching Baukman's personal

---

[7] Baukman argued in a pro se submission to the District Court that there was insufficient evidence to convict him on the storage facility and conspiracy counts. The District Court evidently and appropriately did not consider these submissions in light of the prohibition on "hybrid representation," as Baukman was still represented by his trial counsel at that time. United States v. Turner, 677 F.3d 570, 578 (3d Cir. 2012). These arguments were thus not preserved, and we will therefore apply plain error review. Thayer, 201 F.3d at 219. As we explain in the text, however, these arguments are without merit.

residence on School House Lane recovered letters addressed to the Essex Avenue apartment, further linking Baukman to the Essex Avenue apartment.

Accordingly, the jury was entitled to infer Baukman intended that the property be used for manufacturing and storing controlled substances.

### 5. Conviction for Conspiracy

Baukman also contends that there was insufficient evidence of an agreement between him and Coles to support a conspiracy conviction pursuant to 21 U.S.C. § 846. Although the District Court vacated his conviction on this charge as a lesser included offense of the CCE conviction, the § 846 conviction could (and did) nevertheless serve as a predicate offense under the CCE statute. There was ample evidence from which a jury could infer an agreement to distribute drugs, including the intercepted phone calls between Coles and Baukman concerning the pricing, production, and distribution of cocaine, Baukman's role renting and supervising the operation at the Essex Avenue apartment where the organization produced drugs for sale, Baukman's supervision of the street-level drug distribution by Custis and "Bub," his role as Coles's "right hand man," and his delivery of bags of money and drugs to Coles's home. Accordingly, the District Court did not err by denying the motion for a judgment of acquittal on this count.

### 6. Sentencing

Baukman's contention that his sentencing on Count 1 violated Apprendi v. New Jersey, 530 U.S. 466 (2000), because the jury did not determine the amount of drugs

12

attributable to him personally also fails.[8] The District Court vacated his conviction on this Count as a lesser included offense of his CCE conviction so it had no effect on his sentence, as he concedes in his brief, and thus there is no basis for the relief he seeks.[9]

## B. James Morris

Morris, who was convicted for his role in supplying drugs to the Coles organization, raises four arguments on appeal: (1) that he did not receive timely notice of the Government's intention to seek an enhanced sentence under 21 U.S.C. § 851(a) and that the District Court thus erroneously enhanced his sentence pursuant to 21 U.S.C. § 841(b)(1)(A); (2) that the District Court erred when it did not strike certain testimony of the Government's drug expert; (3) that the District Court should have suppressed the evidence seized from a house where he stayed but did not reside and the car parked in the driveway there; and (4) that there was insufficient evidence to support his conviction for conspiracy.

## 1. Notice Pursuant to 21 U.S.C. § 851(a)

Morris contends that the District Court erred when it applied the enhanced penalty in 21 U.S.C. § 841(b)(1)(A) because the Government failed to serve timely notice of the prior convictions on which the enhancement is based, as required by 21 U.S.C. § 851. Section 851 provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior

---

[8] We review this purely legal issue de novo. United States v. Brown, 595 F.3d 498, 526 (3d Cir. 2010).

[9] Moreover, "Apprendi requires the jury to find only the drug type and quantity element as to the conspiracy as a whole, and not the drug type and quantity attributable to each co-conspirator." United States v. Phillips, 349 F.3d 138, 143 (3d Cir. 2003), vacated and remanded on other grounds sub nom Barbour v. United States, 543 U.S. 1102 (2005). Thus, Phillips also forecloses Baukman's argument.

> convictions, <u>unless before trial, or before entry of a plea of guilty</u>, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . .

21 U.S.C. § 851(a)(1) (emphasis added). Morris argues that the notice was untimely because, while it was filed electronically one hour prior to jury selection,[10] it was not served on Morris or his counsel at that time, and Morris's counsel did not receive a copy of the notice on the day it was filed. We review the sufficiency of the Government's notice de novo. <u>United States v. Weaver</u>, 267 F.3d 231, 246 (3d Cir. 2001).

We first address Morris's argument that his counsel was not served because the notice was filed electronically. Under the federal rules,[11] "a party may use the court's transmission facilities" to make electronic service, if permitted by the local rules. Fed. R. Civ. P. 5(b)(3). The Eastern District of Pennsylvania has adopted local rules permitting such service by the Electronic Case Filing ("ECF") system, and under the rules, registration as an ECF user constitutes consent to receive service of all documents through that system. E.D. Pa. R. Civ. P. 5.1.2(8)(a), (d). Morris's counsel had registered as an ECF user, and had filed and served numerous pleadings through the ECF system. Because "§ 851 incorporates the normal rules governing service," <u>United States v. Rivas</u>, 493 F.3d 131, 143 (3d Cir. 2007), and Morris's counsel had consented to service by

---

[10] The record indicates that the Government filed the notice electronically at 9:08 a.m. on December 18, 2007, approximately one hour before the beginning of jury selection at 10:11 a.m. that same morning. Jury selection continued until December 20, 2007, at which point the District Court recessed until January 16, 2008, when the jury was sworn in and the trial began.

[11] Service of papers in a criminal action "must be made in the manner provided for a civil action." Fed. R. Crim. P. 49(b). The Federal Rules of Civil Procedure (and related local rules) govern service.

14

electronic filing, the Government's filing of the information on the ECF system effected service.

We next turn to whether that electronic service, made one hour before jury selection, was timely. Because the statute requires that service of the information occur "before trial," service before the jury was selected satisfies the statute. See, e.g., United States v. McAllister, 29 F.3d 1180, 1183 (7th Cir. 1994) (timely service of the information minutes before jury selection began); United States v. White, 980 F.2d 836, 842 (2d Cir. 1992) ("[T]he phrase 'before trial' in § 851(a)(1) means before the commencement of jury selection.").[12] Thus, we will affirm Morris's enhanced sentence under § 841.

## 2. Expert Testimony

Morris raises two arguments concerning the testimony of the Government's drug expert. He contends that the expert: (1) impermissibly testified to the "ultimate issue" when he discussed evidence of possession with intent to distribute;[13] and (2) strayed from the bounds of proper drug expert testimony when he described a call between Coles and Morris as a "drug conversation," instead of interpreting particular code words.[14]

---

[12] Some courts have affirmed sentences where the notice was filed after jury selection. See, e.g., United States v. Beasley, 495 F.3d 142, 149 (4th Cir. 2007) (holding that the statutory command that the government file an information "before trial" is "surely ambiguous," and that a district court's finding that it meant "before [the jury] was sworn" was not error). We need not decide whether service after jury selection complies with § 851.

[13] The "ultimate issue" refers to the rule that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

[14] In the heading of this section of the brief, Morris also asserts that the expert improperly testified to his opinion that the money found in Morris's girlfriend's house was the proceeds of drug activity. He does not address that argument in the text of the brief or his reply brief. Accordingly, we view it as abandoned and need not address it.

15

Although Morris contends that both objections were preserved because his counsel objected during each line of questioning, there was no objection to the testimony about intent.[15]  Rather, his counsel's objections concerned the accuracy of a date that the prosecutor used in the hypothetical situation he presented to the expert.  Those objections came after, and were entirely unrelated to, the testimony about intent that Morris now challenges under Rule 704(b).  See United States v. Mitchell, 365 F.3d 215, 257 (3d Cir. 2004) (holding that a defendant had failed to preserve a hearsay error by making an incorrect specific objection on another ground).  Accordingly, he did not preserve his present objection and thus we review the admission of that statement for plain error.  Id.

We have upheld the admission of expert testimony if "it merely supports an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony."  United States v. Watson, 260 F.3d 301, 309 (3d Cir. 2001) (internal citation, alterations and quotation marks omitted).  The expert's testimony did not cross that line.  Our opinion affirming the conviction in United States v. Davis, 397 F.3d 173 (3d Cir. 2005), is instructive.  In Davis, the Government asked the witness to assume the key facts concerning the discovery of the drugs, including the quantity and the paraphernalia.  Id. at 177.  Here, the Government asked the expert to assume the key facts concerning drugs and drug paraphernalia that were recovered from a car that Morris had been seen driving.  In response to the Government's question as to whether the type and quantity of drugs

_____

[15] Counsel for a different defendant objected to an earlier statement as cumulative.

16

and drug paraphernalia were "consistent with drug trafficking or . . . simple possession," the expert responded, "It would be my opinion that would be possession with intent to deliver the narcotics." Id. This testimony did not violate Federal Rule of Evidence 704(b) because it responded to a hypothetical question and did not involve the government's "repeated[ ] refer[ence] to the individual defendant's state of mind when questioning the government expert." Id. at 179 (quotation marks and citation omitted); Watson, 260 F.3d at 305-06. It is true, as Morris contends, that unlike in Davis, the expert also testified as a fact witness.[16] That testimony, however, concerned a different defendant and property search, and there is no indication that the expert relied on his personal knowledge of the facts of the case when providing his expert opinion about the items found that were associated with Morris. Accordingly, the admission of the expert's testimony concerning intent did not constitute plain error.

Counsel for one of Morris's co-defendants did object to the expert's characterization of a recorded conversation as a "drug conversation." Morris App. 592. Morris now contends that this testimony improperly exceeded the scope of expert knowledge. Assuming that the objection did put the District Court on notice of Morris's complaint,[17] we review the District Court's ruling on the admissibility of expert testimony for abuse of discretion. Watson, 260 F.3d at 306. We conclude that the

---

[16] See Davis, 297 F.3d at 179 ("[N]o evidence was presented that [the expert] had any direct relationship with the investigation or the defendants and, therefore, there was no potential for the jury to conclude that [the expert] had any special insight into the thoughts or intent of the defendants.").

[17] In his objection, counsel for the co-defendant contended that the witness's response was "an opinion on the ultimate issue." Morris App. 592. That objection—governed by Rule 704—is different from the claim that the statement exceeded the bounds of expert testimony under Rule 702. Moreover, the objection came after the expert had earlier made the same statement without drawing an objection.

17

District Court did not abuse its discretion when it declined to exclude the "drug conversation" testimony. Here, the expert's testimony was merely shorthand to explain that, based on the context of the sentence he was asked to explain and the use of code words he had previously identified, the defendants' use of the word "dogs" at the beginning of the recorded conversation referred to drugs, while a later reference to "dogs" in the same conversation referred to canines. Morris App. 592-93. The expert did not offer a sweeping conclusion about Morris's activities but rather only provided his understanding of parts of a particular intercepted conversation. See United States v. Theodoropoulos, 866 F.2d 587, 591 (3d Cir. 1989), overruled on other grounds, United States v. Price, 76 F.3d 526, 528 (3d Cir. 1996). Accordingly, we conclude that the testimony was properly admitted.

**3. Motion to Suppress**

Morris next contends that the District Court erred when it denied his motion to suppress the evidence seized from the house at 5 North Burden Hill Road in Quinton, New Jersey, and from the car in the driveway.[18] We review a district court's order denying a motion to suppress for clear error as to its factual findings and exercise plenary review of its application of the law to those facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). Where, as here, the defendant challenges the probable cause determination underlying a warrant, we must "give great deference to the magistrate judge's probable cause determination." United States v. Hodge, 246 F.3d 301, 305 (3d

---

[18] The home was owned by the mother of Thais Thompson. Thompson is one of Morris's co-defendants and the mother of his children.

Cir. 2001). A magistrate judge properly finds probable cause when, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). We "need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause." Hodge, 246 F.3d at 305 (quotation marks and citation omitted). Our inquiry is confined "to the facts that were before the magistrate judge, i.e., the affidavit," and we do not "consider information from other portions of the record." Id. (quotation marks and citation omitted).

Morris argues that the affidavit did not establish that he had a connection to the house, which he contends was not his residence, or that there was drug activity there. Morris is incorrect. The affidavit incorporated another lengthy affidavit, which in turn averred numerous facts concerning Coles's drug conspiracy. The affidavit stated that a phone number associated with Coles had called Morris over 300 times, and that some of those conversations were recorded and revealed Morris's role in acquiring, delivering, and receiving payment for cocaine, connecting Morris to the conspiracy. Furthermore, the affidavit set forth evidence connecting Morris to the residence. In a recorded conversation between Coles and the landline of 5 North Burden Hill, an individual believed to be Morris referred to being in his "crib," Morris App. 726, which was understood to be a reference to the 5 North Burden Hill residence. During a recorded conversation on Morris's wireless phone, Morris told Coles he would be traveling to Mexico. When Coles called the 5 North Burden Hill landline a few days later, the female who answered told Coles that Morris was not in, meaning at the 5 North Burden Hill

19

residence, because he was still on a plane returning home. In addition, the affidavit disclosed that certain law enforcement officers saw Morris operating the gold Chevrolet Suburban that other officers saw parked in the driveway at 5 North Burden Hill. Finally, the affidavit noted that a police report concerning a child custody matter indicated Morris had been in the North Burden Hill home when the police officer visited, further tying Morris to the location.[19]

In short, the Magistrate Judge had a substantial basis for finding probable cause, and the District Court correctly denied the motion to suppress.[20]

**4. Conviction for Conspiracy**

Morris contends that the Government failed to prove the existence of a conspiracy, or that he was a member of it. He preserved this argument through a Rule 29 motion.

The elements of a conspiracy are: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal. United States v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999). The Government can prove these three elements "entirely by circumstantial evidence." Id. We have held that "a simple buyer-seller relationship," which Morris contends existed in this case, "without any prior or contemporaneous understanding beyond the sales

---

[19] Morris contends that the probable cause finding could not have relied on the police report because it was undated, and the affidavit must set forth "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 210 (1932). The police report merely provided additional evidence tying Morris to the home. The wiretapped phone conversations, some of which occurred less than two weeks before the search, provided recent facts to justify a finding of probable cause that there would be evidence of drug activity at the home at the time of the search.

[20] United States v. Helton, 314 F.3d 812 (6th Cir. 2003), on which Morris relies, is distinguishable because the only evidence in that case was that a drug dealer called the residence around three times per month. Id. at 821. In this case, the evidence tying Morris to the drug conspiracy was substantial, including the recorded calls in which Morris and Coles discussed procuring drugs.

agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." Id.

Where the evidence of a defendant's participation in the conspiracy is solely or primarily drug purchases or sales, we look to the surrounding circumstances to "determine whether the defendant is a mere buyer who had such limited dealings with the conspiracy that he cannot be held to be a conspirator, or whether he has knowledge of the conspiracy to the extent that his drug purchases are circumstantial evidence of his intent to join that conspiracy." Id. at 199. Factors that courts consider in this analysis include how long the defendant was affiliated with the conspiracy, whether there was an established method of payment, the extent to which transactions were standardized, whether the actions of the defendant and members of the conspiracy demonstrated a level of mutual trust, whether the transactions involved a large amount of drugs, and whether the buyer purchased the drugs on credit. Id.

Here, the Government introduced extensive evidence from which a reasonable juror could infer that Morris agreed to work with Coles's organization with the intent to distribute large amounts of cocaine. For example, the Government introduced an intercepted phone conversation between Coles and Morris that indicated that Coles asked Morris to get a lower price from Morris's supplier.[21] Morris agreed that he would try to help his "peoples," referring to the Coles organization. Morris App. 371. Morris also noted that the supplier had "seen what [Coles] move[s]," which the jury could infer was a reference to the amount of cocaine Coles sold. Morris App. 371. Later, Morris asked

---

[21] Coles said, "Get that better number for me . . . for us." Morris App. 371.

21

Coles, "[Y]ou trying to get rich ain't you?" Morris App. 371. When Coles responded that he was "trying hard," Morris said "I'm a try to do my best to get you there." Morris App. 371. From this conversation alone, the jury could infer a unity of purpose to successfully sell drugs, as well as Morris's awareness of Coles's group and the volume of drugs that they sold.

Other recorded conversations between Coles and Morris further support this inference. In another conversation, Coles asked, "when we gonna be husky?," Morris App. 381, which the Government's expert testified was a code word referring to having "an ample amount of cocaine." Morris App. 498. Morris told Coles he would go to Cancun to meet with "the old man," and would let Coles know the following week. Morris App. 381. Morris also promised Coles, "I'll see what I can do for you . . . . I'm a try my damndest . . . ." Morris App. 382. Coles responded, "That's why I love you. I know you're gonna do it for me." Morris App. 382. The jury could infer that this exchange reflected Morris's intention to meet with his source in Mexico to secure drugs for Coles's distribution network. In another conversation, Morris told Coles he was concerned about "jawns" that Morris gave Coles. Morris App. 388. The Government's expert testified that a "jawn" in this context was a kilogram of cocaine. Morris App. 495. Coles responded that he had Morris "covered" concerning the "seven [Morris was] talking about." Morris App. 388. A juror could thus infer from this conversation that Morris and Coles trusted each other and that Morris had provided seven kilograms of cocaine to Coles on credit. See United States v. Iglesias, 535 F.3d 150, 156 (3d Cir.

22

2008) (holding that evidence of a credit arrangement was sufficient evidence of an agreement to cooperate).

Based on these facts, and drawing reasonable inferences in favor of the Government, Dent, 149 F.3d at 187, the jury could find that Morris regularly supplied Coles kilogram quantities of cocaine and thereby conspired with him to distribute more than five kilograms of cocaine. Accordingly, we will affirm his conspiracy conviction.

### C. Alton Coles

Coles raises two issues on appeal. First, he contends that the District Court erred when it denied his motion to suppress a firearm that was discovered on his person during a frisk. Second, he argues that the District Court committed plain error by imposing multiple consecutive sentences for possessing firearms in furtherance of a drug-trafficking crime that were based on the same predicate conspiracy offense.

### 1. Motion to Suppress

On March 27, 2004, Coles was stopped by Officers Williams and Younger of the Philadelphia police who found him sitting in his car, blocking traffic. He did not respond when the officers sounded their regular car horn, but "took off" when they sounded their air horn. Coles App. 16. The officers turned on their lights and sirens and followed him to cite him for a traffic violation. The officers approached the car and spoke with Coles. According to Officer Younger's testimony at the suppression hearing, Coles was "very agitated" during the stop, challenging the stop, refusing to provide identification, and making "a lot of hand movement" while keeping his right hand close to his right waistband. Supp. App. 8-9. Officer Younger observed that Coles leaned away from

23

Officer Williams and that when Coles put his hands in the air, he kept his left hand higher than his right, which indicated to Officer Younger that Coles "was holding or concealing something to the right side of his body." Supp. App. 9. Based on this suspicion, Officer Williams frisked Coles while he remained in the car and felt what he believed was a gun near Coles's right hip. Officer Younger drew his gun and Officer Williams reached into the car and removed the firearm from Coles's waistband. They then took Coles into custody.

As explained above, we review a district court's order denying a motion to suppress for clear error as to its factual findings and exercise plenary review of its application of the law to those facts. Perez, 280 F.3d at 336. Here, Coles does not challenge the District Court's factual findings. He only contends that the frisk violated the Fourth Amendment. Under Terry v. Ohio, 392 U.S. 1 (1968), an officer may conduct a brief investigatory stop of a person when the officer has a reasonable, articulable suspicion that the person is connected with criminal activity. Id. at 20. The officer may then conduct a pat-down search for weapons if he has a reasonable suspicion that the person is armed and dangerous, id. at 24, meaning that "a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger," id. at 27. The determination is based on the totality of the circumstances, including the officers' "own experience and specialized training . . . ." United States v. Arvizu, 534 U.S. 266, 273 (2002).

The totality of the circumstances here warranted the pat-down. In United States v. Moorefield, 111 F.3d 10 (3d Cir. 1997), we held that a pat-down during a traffic stop was

24

appropriate where the defendant had not obeyed officers' orders and had made furtive movements, "rais[ing] and lower[ing] his hands several times." Id. at 14. Here, Coles similarly did not comply with officers' orders to provide his identification and suspiciously kept his right hand close to his right side, leaned away from Officer Williams, and did not fully raise his right hand in a way that suggested he was concealing something. Thus, Officer Younger identified a specific and articulable basis to believe that Coles may have been armed, warranting a pat-down search. The District Court did not err when it declined to suppress the firearm that the pat-down revealed.[22]

**2. The § 924(c) Offenses Charged in Counts 70 and 72**

Coles next argues, and the Government concedes, that his convictions on Counts 70 and 72 for possession of a firearm in furtherance of a drug trafficking crime should be vacated because they are based on the same predicate crime, conspiracy to distribute drugs, which was the basis for the conviction on Count 68. After Coles was tried, we decided United States v. Diaz, 592 F.3d 467 (3d Cir. 2010), in which we held that multiple convictions for violating 18 U.S.C. § 924(c) based on the same predicate offense violated the Double Jeopardy clause of the Fifth Amendment. Diaz, 592 F.3d at 475. Under Diaz, therefore, Coles's convictions for violating § 924(c) in Counts 70 and 72 cannot stand because they both depend on the same predicate drug trafficking offense as the § 924(c) conviction in Count 68. Accordingly, we will vacate the convictions on Counts 70 and 72 and remand to the District Court for entry of an amended judgment.

---

[22] Coles attempts to distinguish Moorefield on the ground that his hand motions were objectively less suspicious than the defendant in that case. We defer to the District Court's fact findings on a motion to suppress, United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002), and are satisfied that those facts support a reasonable suspicion that justified a Terry pat-down.

25

## III.

For the foregoing reasons, we will affirm the judgments of the District Court on all counts, except that we will vacate Coles's convictions on Counts 70 and 72 and remand Coles's case to the District Court for the entry of an amended judgment in accordance with this opinion.